## COGGILL *vs.* THE AMERICAN EXCHANGE BANK.

One of two partners drew, in the name of his firm, a bill upon the plaintiff, payable to the order of B, and having forged the name of B as endorser upon the bill, presented it to the Bank of Central New York, had it discounted in the regular course of business, and applied the proceeds to his private use. The Cashier of the Bank endorsed the bill and transmitted it to the defendants for collection, and the plaintiff accepted and paid it to the defendants. After discovering that the payee's endorsement was forged, he sued to recover back the money so paid. *Held*, that the action could not be maintained.

B, the payee, being a stranger to the transaction, and having no interest in the draft, his endorsement was not necessary in order to transfer a good title to the party discounting the paper, or to entitle such party to receive the money upon it.

The plaintiff, having accepted and paid the bill under these circumstances, would have a right to charge the amount against the funds of the drawers in his hands, or, if there were none, to maintain an action against them for money paid to their use.

The case of *The Canal Bank* vs. *The Bank of Albany*, (1 *Hill* 287,) commented upon and approved; but distinguished from this case, inasmuch as there, the endorser whose name was forged, was the *owner* of the draft, and the only person entitled to receive the money upon it. *Per* BRONSON, J.

*It seems* that the drawers, after having passed the draft with the payee's name endorsed upon it, and received the avails of it in an action against them, would be estopped from controverting the genuineness of the endorsement.

Where a bill is put in circulation by the *drawer*, with the endorsement of the payee forged upon it, a *bona fide* holder may treat it as a bill payable to bearer. *Per* BRONSON, J.

ERROR to the Supreme Court, where Coggill sued the American Exchange Bank in assumpsit, to recover back the money which he, as the drawee and acceptor, had paid to the bank as the holders of a bill of exchange, upon which the name of the payee had been forged. The case was this; Shapley and Billings were partners in business at Earlville, Madison county, and the plaintiff resided and did business in the city of New York. On the 28th of July, 1843, *Charles S.* Billings, one of the partners, drew a bill in the name of the firm, on the plaintiff, for $1,500, payable to the order of *Truman* Billings, ten days after sight. Charles S. Billings forged the name of Truman Billings, as endorser on the

draft, and also the name of Truman Billings, Junior ; and with those names upon the bill, presented it to the bank of Central New York, at Utica, for discount, on the 29th of July ; and the bank discounted the bill and paid the money to Charles S. Billings.   The discount was made in the usual course of business, the bank having no knowledge of the forgery, nor any reason to suppose that Billings was not acting, as he professed to do, for his firm, though in point of fact he applied the money to his own private use.   The bank endorsed the draft, and sent it to the defendants for collection.   The plaintiff accepted the bill, and paid the same at maturity, on the 12th of August, to the defendants.   The plaintiff had no funds of the drawers in his hands, but accepted and paid the bill for their accommodation, in pursuance of an agreement made with Charles S. Billings to do so.   Charles S. Billings absconded, about the 7th of August, on account of this and other forgeries. . On learning that the names of the endorsers had been forged, the plaintiff, on the 18th of August, called on the defendants to refund the money, and then brought this action to recover it back.   On the trial, the Circuit Judge charged the jury that the plaintiff was not entitled to recover, and the plaintiff excepted to his opinion.   The jury found a verdict for the defendants, which the Supreme Court refused to set aside, and rendered judgment for the defendants.   The plaintiff brings error.

*B. D. Noxon and J. Van Buren,* (Atty. Genl.) for plaintiff in error.

*J. A. Spencer,* for defendants in error.

*Points for plaintiff in error :*

· I. The endorsement of the name of the payee being forged, the defendant had no title to the bill, and the payment was therefore made without consideration, and under a mistake of fact.   (*Canal Bank* vs. *Bank of Albany,* 1 *Hill* 289 ; *Talbot* vs *Bank of Rochester, ib.* 295 ; 6 *Barn. and Cress.* 671 ; 9

*ib.* 902; 9 *D. & R.* 731; 5 *ib.* 403; *Ch. on Bills,* 430, 198, 265; 4 *T. R.* 28; 1 *H. Bl.* 607; 1 *Car. & Payne* 297; *Doug.* 633.)

II. The plaintiff, by his acceptance of the draft, contracted to pay to the order of Truman Billings, and being an accommodation acceptor, he may insist on the letter of his contract.

III. Had the plaintiff refused to pay the bill, the defendant could not have compelled him, inasmuch as he could not make title through a forgery.

IV. The acceptance of the bill was no admission of the genuineness of the endorsements. The Central Bank, on the other hand, by endorsing the bill before it was accepted, guaranteed the genuineness of the previous endorsements, and thus gave them credit with the plaintiff, and it should not now be permitted to take advantage of its own wrong.

V. The plaintiff has no remedy over against the firm of Shapley and Billings, the drawers.

*Points for defendant in error :*

I. Truman Billings, the payee, never had any interest in the draft, and therefore his endorsement was not necessary to pass the title to the Bank of Central New York. The bank, by receiving it from Shapley and Billings, the drawers, became the owner, and had the right to receive the money upon it. (*Ch. on Bills* 220, *9th Am. from the 8th London ed ; ib.* 178; 2 *Bailey Rep.* 547; 5 *Greenl. Rep.* 282; 13 *Mass.* 304.)

II. As between the drawers and acceptor, the bill is to be regarded as payable to the drawer's order, or to the order of a fictitious person, or to the order of the Cashier of the Central Bank. (*Pletts* vs. *Johnson,* 1 *Hill* 112.)

III. The plaintiff, as acceptor, had no interest in the endorsements, and no remedy upon them. He stands as the maker of a note, and the bank alone was interested in having genuine endorsers. (*Ch. on bills* 267, *same ed. as above ;*

*Griffin* vs. *Rudd*, 21 *Wend.* 502, 504; *Suydam* vs. *Westfall*, 4 *Hill* 211, 217.)

IV. The plaintiff is not liable to Truman Billings, the payee, for the money upon this draft. Truman Billings having no interest in the draft, has no claim to recover upon it. The case, therefore, does not come within the reason of the rule which allows an acceptor, who has paid the draft upon the faith of a forged endorsement, to recover it back.

BRONSON, J. In an action against the drawee of a bill, it is not enough for the holder to prove that it has been accepted, without also establishing his title to the bill. And if the acceptor, under a mistake as to the fact of ownership, has paid the bill to one who had no title, the money may be recovered back, although it was paid to a bona fide holder. (*Canal Bank* vs. *Bank of Albany*, 1 *Hill* 287.) The plaintiff relies upon this case as not being distinguishable from he own; but he is under a great mistake. It is not expressly stated in the report of that case, that Bentley, the payee named in the draft, was the owner of it; nor was it necessary that the fact should be stated, for where nothing appears to the contrary, the payee must be taken to be the owner. It may, however, be proper to mention, that it did expressly appear that Bentley was the owner of the draft. My recollection on the subject has been confirmed by inquiries made since the argument. In the case now before us, the fact is fully established, that Billings, the payee named in the bill, never was the owner of it; nor was it drawn with the intent that he should either endorse it, or have any interest in, or concern with it. In the one case, the payee owned the bill, and could have maintained actions upon it, both against the acceptors and the drawers; while in the other, the payee has no interest in the bill, and cannot maintain an action upon it, for his own benefit, against any one. In the one case, payment to the holder of the bill would be no protection against an action by the payee, because he was the true owner; while in the other, the payee, having no title, could in no event have a

legal claim to the money. The distinction between the two cases, is very material and is quite too obvious to be mistaken by any one.

Although the payee, Billings, had no interest in the bill, the question still remains whether the Bank of Central New York, in whose place the defendants stand, acquired a good title to it. We think they did. Shapley and Billings drew the bill, and passed it to the bank, with the name of the payee endorsed upon it. By that act they plainly affirmed that the endorsement was genuine, so that the bill might be negotiated by delivery. By means of this representation they induced the bank to discount the bill; and if the bank had brought an action upon it against them, counting in the usual form, as upon a bill payable to Truman Billings, and endorsed by him, the drawers would, upon the plainest principles for maintaining honesty and fair dealing, have been estopped from controverting the genuineness of the endorsement. If an authority is needed in support of this doctrine, *Meacher* vs. *Fort* (3 *Hill So. Car.* 227, and *Riley's Law Cas.* 248,) is a case directly in point.

There is another form of declaring in which the bank might have recovered on the bill. As the payee had no interest, and it was not intended that he should ever become a party to the transaction, he may be regarded, in relation to this matter, as a nonentity; and it is fully settled that when a man draws and puts into circulation a bill which is payable to a fictitious person, the holder may declare and recover upon it as a bill payable to bearer. (*Vere* vs. *Lewis*, 3 *T. R.* 182; *Minet* vs. *Gibson*, id. 481, *and* 1 *H. Black*, 569, S. C. in the House of Lords; *Collins* vs. *Emett*, 1 *H. Black*, 313; *Plets* vs. *Johnson*, 3 *Hill* 112.) In legal effect, though not in form, the bill is payable to bearer; and it is always good pleading to state the legal effect of the contract. It is said in some of the cases, (*and see Bennett* vs. *Farnell*, 1 *Camp.* 130, *and* 180, *b. note*,) that when the action is against the acceptor of such a bill, it must appear, that he knew the payee was a fictitious person. But I can see no sufficient reason for

laying down such a rule. It is enough that the holder has a a good title to the bill, so that the acceptor on paying it, can properly charge the amount against the funds of the drawer in his hands, if there be any; and if there be none, that he may have an action against the drawer for money paid to his use. As the acceptor can never resort to the payee or endorser, he has no interest in knowing through whose hands the bill has passed, except for the purpose of ascertaining that the holder has a good title.

It may be well enough, by way of discouraging such transactions, to hold, that one who discounts a bill for the benefit of the drawer, with knowledge of the fact that the payee is a fictitious person, cannot recover against the acceptor. (*Hunter* vs. *Jefferey, Peake. Add. Cas.*, 146.) But that doctrine has nothing to do with this case; for the bank had no knowledge or suspicion at the time the bill was discounted, that the name of the payee had been forged. ·

The point has been adjudged, that when the maker of a promissory note puts it into circulation, with a forged endorsement of the name of · the payee upon it, a bona fide holder may sue and recover against the maker as upon a note payable to bearer·; (*Fort* vs. *Meacher, Supra.*) and the same rule has been applied where the payee had no interest in the note, and it was not intended that he should become a party to the transaction. (*Foster* vs. *Shattuck,* 2 *N. Hamp.* 446.) Notwithstanding what was said in *Dana* vs. *Underwood,* (19 *Pick.* 99.) I think this sound doctrine; and it is applicable to the case, of a bill put into circulation by the drawer with a forged endorsement upon it. A bona fide holder may treat it as a bill payable to bearer.

The bank had a good title to the bill as against the drawers, and the payee; and that was a good title against all the world. No one is injured by this doctrine. The bill has answered the end for which it was drawn. The plaintiff has paid money for the drawers in pursuance of their request; and he has the same remedy against them that he would have had if the endorsement had been genuine.

Coggill *v.* The American Exchange Bank.

I have spoken óf the drawing and negotiating the bill as the act of both of the partners, although only one of them was present at the time, because such was the legal effect of the transaction.   It is said that Charles S. Billings was not the agent of his partner Shapley for the purpose of committing a forgery; and that is very true; but his right to draw and negotiate bills in the name of the firm has not been questioned; and that is all that is material to the present inquiry.   Is it not important to know who put the name of Truman Billings as endorser upon the bill.   It is enough that Truman Billings was not the owner of the bill, and that it was passed to the bank with his name upon it.

As the bank discounted the bill for the firm of Shapley and Billings, it is of no importance that Billings applied the money to his own private use, instead of carrying it into the affairs of the partnership.   And in relation to the estoppel, it is quite clear that the declarations and acts of one of the partners, made and done while transacting the partnership business, and relating to it, are equally conclusive upon both of them.   We have not been referred to any book which holds a different doctrine.

The plaintiff probably accepted and paid the bill under the mistaken assumption that the endorsement was genuine.   But he was not mistaken about the main fact which he was concerned to know, which was, that the holder was the owner of the bill.   Having paid the money to the proper person, the plaintiff has all the rights against the drawers which he would have had if the endorsement had been made by Truman Billings; and there is no principle upon which this action can be maintained.

Judgment affirmed.