## Rogers v. Ware.

BILL OF EXCHANGE. A holder of a bill must show a genuine indorsement by the payee before he can recover thereon.

——: *Fictitious payee.* But, if the bill run to a fictitious payee, it is as if drawn payable to bearer; and indorsement is not necessary.

——: ——. And, if it be payable to some person who had no interest in it, and not intended to become a party to it, whether such person is or is not known to exist, the payee may be deemed fictitious. Minet *v.* Robinson, 1 H. B., 561; Foster *v.* Shattuck, 2 N. H., 446; Pease *v.* Dwight, 6 How., 190, distinguished.

——: ——. But if it be payable to some person known at the time to exist, and present to the mind of the drawer when he made it, as the party to whose order it was to be paid, the genuine indorsement of such payee is necessary, in order to a recovery thereon by an indorsee, even though he have no interest in it, and the drawer knew that fact.

——: ——. Nor is the case changed by the circumstance, that the party who induced the drawer to make such bill defrauded him in so doing.

——: ——. A deposited with B, a banker, a forged draft, and had credit for its contents; and, upon his check against the same, obtained B's draft payable to the order of C, a person known to the parties, and mentioned by A at the time as the person who was to indorse the draft. A negotiated the draft to the plaintiff for value, and *bona fide* indorsing thereon the name of C. B, discovering the forgery of the draft taken by him from A, stopped payment of the one he gave. *Held* that C was not a fictitious payee; but his genuine indorsement must be shown to support the plaintiff's title.

This was a petition in error to a judgment rendered by the District Court for Douglas County, in favor of the plaintiffs, for $3,299.40.

ROGERS *v.* WARE.

It was an action upon a bill of exchange, of which the following is a copy : —

> "BANKING-HOUSE OF J. A. WARE,
> NEBRASKA CITY, NEBRASKA,
> Aug. 2d, 1869.

"Pay to the order of Wm. T. Allen three thousand dollars.

(Signed)          J. A. WARE,
                            By H. N. SHEWELL.

"To Imp. & Tra. Nat. Bank, New York."
(Indorsed) "Wm. T. Allen," "S. H. Fowler."

The action was brought by Eliphas H. Rogers and Lucius H. Rogers, bankers at Fremont, in this State, to whom, in the usual course of business, the draft was for value duly indorsed, on the fourth day of August, 1869, against Ware, the drawer, and Fowler, one of the indorsers. Besides the usual allegations in a petition upon such an instrument, and also of the due presentation thereof for payment, and its refusal and protest, it was averred by the plaintiffs that the said William T. Allen in the said draft named was a fictitious person, and had no interest in or connection with the same, of which the said Ware was well advised; that the said Ware delivered the same to a person whose name is to the plaintiffs unknown, who indorsed the same by the name William T. Allen, and delivered it to the defendant Fowler, who indorsed the same to the plaintiffs, and the said Fowler then and there representing that the person presenting the bill was William T. Allen, and the identical person named in the said bill as the payee thereof; that the said plaintiffs indorsed the said bill to the First National Bank of Omaha, which, on the tenth day of August, 1869, caused the same to be duly presented for payment,

ROGERS *v.* WARE.

which was refused, the defendant Ware having directed the drawee not to pay the same.

The defendant Ware answered, admitting the drawing of the draft by him, but denying that Allen, the payee therein, was a fictitious person; and alleging, that, on the day the bill bears date, a man who represented that his name was C. G. Whiteman called at his bank, and deposited with him a draft for three thousand five hundred dollars, purporting to be drawn by the National Bank of Bloomington, on Gilman, Dunlap, & Co., of Cincinnati, Ohio, payable to the order of C. G. Whiteman, who indorsed the same to Ware; that he immediately sent the draft to the drawees for collection; that it was not paid, but pronounced a forgery, and that the same was a forgery, as he afterwards learned from the Bloomington Bank; that, consequently, he never received any consideration for the draft in question; that, at the time he drew the draft, Whiteman represented that he was about to purchase a stock of goods of Day, Allen, & Co., of Chicago, and wanted the draft made payable to the order of William T. Allen of that firm; that the defendant, believing that the draft would go into the hands of said Allen, of said firm, delivered the same to Whiteman, to be by him delivered to Allen; that the indorsement of the name of William T. Allen on said draft was a forgery, and that the plaintiffs are not innocent holders of said draft.

To this answer there was a reply, denying these allegations.

The cause was tried to a jury.

Upon the trial, it was shown that a man, who gave his name as C. G. Whiteman, came to Nebraska City, the place where the defendant Ware did business, and represented that he was from Chicago, where he had

### Rogers v. Ware.

been in the employment of Day, Allen, & Co., one member of which was named William T. Allen. This firm was engaged in selling goods, and was known to Ware when he made the draft. Mr. Allen, of this firm, testified that neither he nor his firm ever had any connection with this draft, and knew nothing of it, nor have any interest in it; that the first he knew of it was by a letter from Mr. Ware, inquiring if he had indorsed it, or authorized Whiteman to draw it; and that Whiteman had never in any way been connected with him or his firm. It further appeared that this man came to Ware's banking-house, and asked for a draft for three thousand dollars, payable to the order of William T. Allen, stating at the time that he wanted it to buy goods with of Day, Allen, & Co., of Chicago, and that Mr. Allen was a member of that concern: whereupon the draft was accordingly made and delivered to him.

This was on the 2d of August; and on the next day he appeared at Fremont, giving out his name as William T. Allen. On the 4th he presented the draft to the plaintiffs, and asked them to cash it. They required him to identify himself, which he did by producing at the bank the defendant Fowler, who stated to the plaintiffs that he was William T. Allen. But, in fact, Fowler knew nothing of it, except from this man's previous representations during the time he was in Fremont. Without knowing more, the plaintiffs cashed the draft, indorsed it to the First National Bank of Omaha, by which it was duly presented for payment when it was dishonored.

On the trial, the defendant Ware offered himself as a witness on his own behalf, and the following question was asked: —

"State whether or not you ever received any consideration for making this draft."

ROGERS *v.* WARE.

The plaintiffs objected; and the Court sustained the objection, and the defendant excepted.

The question was then asked, —

"State to the jury how much is in your bank to the credit of this man Whiteman."

The plaintiffs objected; and the Court sustained the objection, and the defendant excepted.

The defendant offered in evidence a deposition of E. Throp, in which he testified that he was cashier of the National Bank of Bloomington; that the draft in the answer mentioned, drawn by that bank on Gilmore, Dunlap, & Co., of Cincinnati, Ohio, to the order of C. G. Whiteman, for three thousand five hundred dollars, was a forgery.

The plaintiffs objected to the reading of this deposition to the jury; and the Court sustained the objection, and the defendant excepted.

The Court, under the defendant's exception, charged the jury, that "it is shown, by the pleadings and evidence, that the draft was made and delivered by the defendant; and that W. T. Allen, named as payee, was, in contemplation of law, a fictitious person, having no interest or concern in the draft; and therefore his indorsement of it was not necessary to give title to the plaintiffs."

"It is also shown sufficiently, by the evidence, that the plaintiffs received the draft soon after its issue from the holder and bearer thereof, and paid value for it; and were, at the time of the commencement of this suit, *bona-fide* holders and bearers thereof. They are, therefore, entitled to recover upon it."

The defendant Ware requested the Court to instruct the jury, that "if they believe, from the evidence, that the name William T. Allen, the payee in the bill in controversy, was forged on the back of the same as

ROGERS *v.* WARE.

indorser at the time or before the plaintiffs purchased the same, then they must find for the defendant."

The Court refused to give the said direction; and the defendant excepted.

He further requested the Court to instruct the jury, "that, in order to entitle the plaintiffs to recover, it must be shown to their satisfaction, by the evidence, that the payee in the bill, William T. Allen, indorsed the same, and that his signature is genuine." The Court declined to give the said request; and the defendant excepted.

He further requested the Court to direct the jury, that "it is incumbent upon the plaintiffs to prove that they became legally possessed of the draft, immediately or mediately, through the person to whom it was originally delivered by Ware." The Court gave the direction, adding, "I am compelled to say, that this fact is sufficiently shown by the testimony. The person whom the defendant says the draft was drawn in favor of disclaims all interest therein by his testimony, and has repudiated it." The defendant excepted to the matter so added to his request.

The jury rendered a verdict for the plaintiffs. The defendant moved for a new trial; which was denied.

*E. E. Brown*, for plaintiffs.

I. It was necessary for William T. Allen, the payee of the draft, to indorse it, in order to pass the legal title to the defendants in error; and the Court erred in directing the jury to find for them without proof of his indorsement.

It will be admitted that the legal rule is, that, in an action by an indorsee of a bill or note payable to order against the maker, he must not only prove the signature

ROGERS *v.* WARE.

of the maker, but also that of the payee as indorser, to be genuine. *Canal Bank* v. *Bank of Albany*, 1 *Hill*, 287 ; *Blakely* v. *Grant*, 6 *Mass.*, 385.

Bacon, in laying down this rule, speaking of the bill, says, " The money is to be paid to him in whose favor the bill is drawn, or to the indorser in case it be indorsed over ; of which indorsement, it seems, the drawer, acceptor, and drawee must take notice at their peril." 6 *Bacon's Abrigt.*, 788.

Again he says, " A transfer by indorsement can only be made by him who has a right to make it ; and *that is strictly only the payee*, or the person to whom he or his indorsees have transferred it, or some one claiming in the right of some of the parties." 6 *Bacon's Abrigt.*, 792.

The Court below, however, seems to have recognized this as the general rule, but claims, that because the evidence in this case showed that William T. Allen, the payee, had no interest in the bill, he was for that reason, in contemplation of law, a fictitious person ; and therefore his indorsement was unnecessary to pass the legal title. An important question, and perhaps the most important one, presented for the consideration of this Court, is, " Does the payee named in a bill of exchange, if a real person, and known by the maker or drawer to be such, and to whom he expects and intends that it shall be delivered become, in contemplation of law, a fictitious person simply because he has no interest in the bill ? and is his indorsement, therefore, unnecessary to pass the legal title ? "

All of the authorities I have been able to find agree in answering this question in the negative. *Morgan* v. *Bank of the State of New York*, 1 *Duer*, 434, *affirmed in N. Y. Court of Appeals*, 1 *Kernan*, 404 ; *Balles* v. *Stearns*, 11 *Cush.*, 320 ; *Dana* v. *Underwood*, 19 *Pick.*,

99; *Mainort* v. *Roberts,* 4 *E. D. Smith,* 84; *Foster* v. *Shattuck,* 2 *N. H.,* 446.

II. In an action brought by an indorsee on a draft payable to order against the maker, in order to dispense with the necessity of proving the indorsement of the payee to be genuine, on the ground that the payee is a fictitious person, the plaintiff must show, —

1st, That the maker knew the payee was a fictitious person at the time he made the draft; and,

2d, That he indorsed the name of the fictitious payee upon it, and then transferred it to a *bona-fide* holder for value.

Or, if the payee be a real person, the plaintiff must show, —

1st, That the indorsement of the payee was forged by the maker, or at least with his knowledge and consent; and,

2d, That the maker negotiated the draft with such forged indorsement upon it to a *bona-fide* holder for value.

The reason of this rule is obvious. The law in such case estops the maker of the draft, who has himself made it payable to a fictitious person, and indorsed the name of his fiction upon it, or who has made it payable to a real person, and forged the name of the payee upon it, and then transferred it, from denying his liability; and such a draft may be declared upon by a *bona-fide* holder for value as payable to bearer. 1 *Edwards on Bills and Notes (marginal pages),* 125, 126, 683; 1 *Parsons on Bills and Notes,* 32 (*note*); *Chitty on Bills,* 157, 158, 167, 172, 566, 643; 2 *Parsons on Bills and Notes,* 50, *and note, and* 591, 592; *Hortsman* v. *Henshaw,* 11 *Howard U. S.,* 177; *Plets* v. *Johnson,* 3 *Hill,* 112; *Minet* v. *Gibson,* 3 *Term,* 482; *Mainort* v. *Roberts,*

Rogers *v.* Ware.

4 *E. D. Smith*, 82; *Tatlock* v. *Harris*, 3 *Term*, 174; *Vere* v. *Lewis*, 3 *Term*, 182; *Coggill* v. *American Exchange Bank*, 1 *N. Y.*, 113; *Foster* v. *Shattuck*, 2 *N. H.*, 446.

A second reason for the above rule is, that any person disposing of a negotiable instrument guarantees, by implication of law, that all the signatures then on the instrument are genuine. *Edwards on Bills and Notes (marginal page)*, 685, 686; *Heinrich* v. *Whitney*, 15 *Johns.*, 240; *Erwins* v. *Downs*, 15 *N. Y.*, 575.

The above is the only exception that permits any departure from the otherwise inflexible rule, that, in an action on a draft by the indorsee, the indorsement of the payee must be proved; and the policy of allowing even this departure has been seriously questioned by some very eminent jurists. 1 *Parsons on Bills and Notes*, 33 *(note)*; *Bennett* v. *Farwell*, 1 *Camp.*, 130 *and* 180; *Dissenting Opinions of Justices Eyre and Heath in Minet* v. *Gibson*, 1 *Hen. B.*, 569.

The name of the payee, William T. Allen, being forged on the draft in question after it had left the possession and control of the maker, the defendants in error could take no title through such forged indorsement; and they occupy no better position than they would if no indorsement whatever had been made. *Edwards on Bills and Notes (marginal page)*, 190; 2 *Parsons on Bills and Notes*, 234; *Canal Bank* v. *Bank of Albany*, 1 *Hill*, 287; *Graves* v. *American Exchange Bank*, 17 *N. Y.*, 205; *Mead* v. *Young*, 4 *Term*, 28.

III. The interest which the defendants in error took in this draft, if any, was the equitable interest which their assignor had, *and no other nor greater*.

A draft payable to order may be transferred without indorsement so as to vest the property in the purchaser; but such a transfer does not clothe the assignee with all

the rights of an indorsee of negotiable paper trans-
ferred to him in the usual manner and course of busi-
ness. It gives him title to the draft, but subject to
every equitable defence which the maker had against
it at the time of the transfer. *Edwards on Bills and
Notes (marginal page)*, 286, 287; *Hedges* v. *Seeley*, 9
*Barb.*, 214; *Franklin Bank* v. *Raymond*, 3 *Wend.*, 69;
*Jones* v. *Whittier*, 13 *Mass.*, 304.

The above is unquestionably the true legal rule in
cases of this character, and the only one that can do
equal and exact justice to all the parties. For the
reasons above stated, we say the Court below erred in
excluding the evidence offered in regard to the consid-
eration for which the draft was given, and also in its
instructions given the jury in regard to the payee being
a fictitious person; and therefore the judgment should
be set aside, and a new trial ordered.

*E. Wakeley* and *A. J. Poppleton*, for the defendants
in error.

I. If a draft be payable to a fictitious person, espe-
cially if the drawer knows the fact, it is, in contempla-
tion of law, payable to bearer. 1 *Parsons on Bills*, 32,
560, 591, 592, *and notes;* 2 *Parsons on Bills*, 48–50;
3 *Kent's Comm.*, 77, 78; *Edwards on Bills*, 125–130
(*marginal paging*); *Story on Bills*, sect. 50, 200.

II. It is claimed, however, that because there was in
fact such a person as William T. Allen, and because
the attention of the maker was directed to him as a
person who might perhaps become the holder of it, he
was not a fictitious person, but a person whose indorse-
ment was necessary to transfer and give title to it.

We insist, that upon the facts stated in the answer,

ROGERS *v.* WARE.

and shown by the proofs, Allen was, for all purposes connected with the draft, a fictitious person, and that Ware knew it.

1. Allen never had any interest in the draft. He did not furnish the consideration for it: it was not delivered to him. There was no agreement that he was to have an interest in it. He did not know of its issue. He did not know Whiteman, or whoever the person was to whom it was issued. It was not intended by Whiteman that Allen should know of it. In short, he was an absolute stranger to the whole matter and proceeding. The answer and the proofs show conclusively that Ware knew that Allen had no interest in it, and never would have, except in the wholly uncertain and contingent event that Whiteman should purchase of him a bill of goods, and give the draft in payment.

2. Allen not only had no interest in the draft, but he could not be compelled to indorse it, and had no interest, motive, or inducement, to indorse it.

3. The position of plaintiff in error, therefore, is, that Ware issued a draft which could not be transferred to any one, so as to give title, except by the indorsement of a person who had no reason or motive to indorse it, and could not be compelled to do so. Also that Ware could not be required to pay it without such indorsement, for the manifest reason that he had promised to pay it only to that person's order. Therefore, although Ware had received full consideration for making the draft, he could never be compelled to pay it unless Allen should volunteer to indorse it.

Upon the whole reason of the case, when Ware issued and delivered the draft to a person whom he knew was not the payee named in it, and further knew that such payee had no interest in or concern with it, and might never see or know of it, should he not be

held to the same liability as if he had known that the payee was in every particular a pure fiction; namely, the liability to pay the draft to bearer?

A person having no interest in, or concern with, the note or draft, is regarded as a fictitious person. 2 *Parsons on Bills*, 591, 592, *and notes; Coggill* v. *American Exchange Bank*, 1 *N. Y.*, 113 ; *Pease* v. *Dwight*, 6 *Howard*, 190 ; *Moore* v. *Anderson*, 8 *Indiana*, 18 ; *Farnsworth* v. *Drake*, 11 *Indiana*, 101 ; *Foster* v. *Shattuck*, 2 *N. H.*, 446 ; *Blodget* v. *Jackson*, 40 *N. H.*, 41 ; *Meacher* v. *Fort*, 3 *Hill* (*So. Ca.*), 227 ; *Grant* v. *Vaughn*, 3 *Burr.*, 1516 ; *Plets* v. *Johnson*, 3 *Hill*, 112.

III. This is not a case where the transfer to Rogers & Co. can be held to be only an equitable assignment of a non-negotiable instrument, and therefore subject to equities between the holder transferring it and the drawer.

Upon all the authorities the draft was negotiable. If the payee was a real person for the purposes of the draft, it was negotiable by his indorsement. If the payee was a fictitious person, it was payable to bearer, and negotiable by delivery, or by the indorsement of the name of the fictitious person by the owner and holder. There is no middle ground. No authority holds such an instrument to be payable *only* to the person to whom it was issued.

IV. If the payee be a pure fiction, the acceptor must of course pay without requiring the legal impossibility of the holder showing title through the indorsement of such fiction. Is not the impossibility just the same of showing title through indorsement of a person having a real existence, where he was not a party to the instrument, and cannot be *identified* by the drawer?

If a draft be payable or indorsed to John Smith, and

ROGERS v. WARE.

be delivered by the maker or by an indorser to some John Smith, this fixes and identifies the John Smith intended. The acceptor then has the means of ascertaining whether the John Smith who is a party to the draft holds it, or has indorsed it to some holder. How is this possible in such a case as this, where the particular William T. Allen intended as the payee by the maker is distinguished from all others of that name *only* by the mental operation of the maker? Suppose Whiteman had obtained the genuine indorsement of some man *whose real name was* William T. Allen, but was not the man *intended* by Ware, and the drawer had accepted and paid it: upon the reasoning of the plaintiff in error, the draft would not have been indorsed by the real payee. How was it possible for Rogers & Co., purchasing the draft, to know whether or not the William T. Allen named in it had indorsed it?

V. For the purposes of this draft, the person to whom it was sold and delivered, and whom Ware knew to be the only person interested in it, may be regarded and presumed to be William T. Allen, whatever his real name was. The proof shows satisfactorily that his real name is unknown. He called himself Whiteman at Nebraska City, and Allen at Fremont. Either or neither may have been his real name.

All authorities agree that the *real payee*, by whatever name designated, may transfer the instrument, and, if necessary, may assume such name, and indorse it. Cases cited under point II.; *Chaffee* v. *Taylor*, 3 *Allen* (*Mass.*), 598.

CROUNSE, Justice.

" When one has done a mercantile act," says Lord Ch.

ROGERS *v.* WARE.

Baron Gilbert, " he subjects himself to mercantile law." *Gilbert's Lex Prœtoria*, 288 ; 3 *Kent's Comm.*, 79. This law declares, that when Ware signed and delivered to the person representing himself as Whiteman the bill of exchange drawn on the Importers' and Traders' National Bank of New York for three thousand dollars, payable to William T. Allen or order, he undertook, in the event of its dishonor, to pay that sum to Allen or his indorsees. *Jac. Law Dic.*, title *Bill of Ex.*, *IV.* By an equally familiar rule of mercantile law, any holder of that bill must show such indorsements as establish his title before he can recover of Ware : the indorsement of the payee must, at all events, be shown ; because, without that, it cannot appear that he made an order, upon the existence of which depends the title of the indorsee. *Id. V.* 2.

Rogers & Co., as bankers, well understood this, and demanded the indorsement of William T. Allen, but were deceived by a forgery. Unable to show the indorsement of Allen, and comprehending the futility of proceeding against Ware as the equitable assignees of Whiteman *alias* Allen, — when it must appear that he who forged the indorsement of the payee on the bill of exchange had likewise imposed a forged and worthless draft upon Ware in the purchase of it, — Rogers & Co. declare on the bill in question as payable to a fictitious payee, and therefore payable to bearer, relying on the circumstance that Allen had no interest in the bill to establish his character as fictitious payee. That Allen never had any interest in the bill of exchange is undeniable. That there was such a person as William T. Allen, of the firm of Day, Allen, & Co., of Chicago ; that such firm was understood by Ware to exist, and that he had made drafts in their favor ; that he was requested to make this draft to the order of William T. Allen ; and that he had in his mind the Allen who was

Rogers *v.* Ware.

a member of the firm when he signed and delivered the draft; and that he had no reason to believe but that the same would be paid to the said Allen or his order, — is equally clear from the record. We then have the question presented, whether, under such a state of facts, Allen may be regarded as a fictitious payee, and his indorsement be dispensed with.

Among the first cases reported where this class of indorsement was considered is that of *Tatlock* v. *Harris*, 3 *D. & E.*, 162. Harris drew a bill payable to Grigson & Co., and accepted the same, and gave it to Lewis & Potter, who indorsed it, in the name of Grigson & Co., to the plaintiffs. Harris defended on the ground that Grigson & Co. had not indorsed it. Lord Kenyon, Chief Justice, among other things, says, " The necessary inference which the jury would have made was, that, at the time the bill was drawn, there were no such persons in existence as a Grigson & Co.; and that the fact was notorious to all the parties in the transaction, and particularly to the defendants in this cause. On these facts, what the conscience of the case is, no man can doubt; for it is extremely clear, that the defendant, who is now called upon to pay this bill, has received the value of it, and therefore ought, in conscience, to account for it. . . . This decision proceeds on the special circumstances of the case; namely, that the defendant, at the time of entering into his engagement, knew that there were no such persons as Grigson & Co., and that therefore, in point of formal derivation of title, that which is usually done could not be done in this case. . . . The counts on which the judgment of this Court is given are those for money paid, and money had and received."

The question of interest in the payee did not arise here; but it will be remarked, that the decision of the

ROGERS v. WARE.

Court proceeds upon the circumstance that the payees named had no existence in fact, and that this was known to all the parties, especially the drawee.

Several other cases arose about the same time (1786–1788). That most fully considered, and reported at great length, is *Minet* v. *Gibson*, 1 *Henry Blackstone*, 561. The effect of the determination in the House of Lords is given in *Jacob's Law Dic.*, *Bills of Ex.*, 5, 3, as follows: "If a bill of exchange be drawn in the name of a fictitious payee, with the knowledge as well of the acceptor as the drawee, and the name of such drawee be indorsed upon it by the drawer with the knowledge of the acceptor, which fictitious indorsement purports to be to the drawer himself, or his order, and then the drawer indorses the bill to an innocent indorsee for a valuable consideration, and afterwards the bill is accepted, but it does not appear that there was an intent to defraud any particular person, such innocent indorsee for a valuable consideration may recover against the acceptor as upon a bill payable to bearer. Perhaps also, in such case, the innocent indorsee might recover against the acceptor as on a bill payable to the order of the drawer, or on account stating the special circumstances."

This is a leading case; but it affords little or no support to the position of the defendant in error. Several elements are wanting in the case under consideration which existed in that of Minet *v.* Gibson. It is sufficient to call attention to the fact, that the drawer there indorsed the name of the fictitious payee on the bill himself, — a circumstance, as we shall have occasion to notice hereafter, which went to fix his liability. *Coggill* v. *American Ex. Bank*, 1 *N. Y.*, 113; *Herrick* v. *Whitney*, 15 *Johns.*, 240.

Among the cases pressed upon the attention of this

ROGERS *v.* WARE.

Court, as sustaining the position that Allen is to be regarded as a fictitious payee, is that of *Foster* v. *Shattuck*, 2 *N. H.*, 446. This was assumpsit on a promissory note, made by the defendants, for $1,666.67, payable to Moses Foster or order, and was declared on as having been indorsed to the plaintiff by the payee. The signature was admitted ; but the indorsement appeared to have been made by a person in Milford in the name of Moses Foster. The defendant contended that one Moses Foster of Andover was intended to be the payee; and, the case being submitted to the jury, they found that the plaintiff alone had always possessed the note, and loaned the money to two of the defendants for which it was given, and that no person of the name of Moses Foster had ever possessed any interest in it, or been particularly interested as payee.

Woodbury, J., says, " It appears, that though the whole interest of this note has ever been in the plaintiff, yet it was made payable to Moses Foster or order. Hence he must claim through some person of that name who was intended as payee, if any particular person was so intended. But, the jury having found that no person in particular was intended as payee, no person was authorized to indorse it ; because every negotiable note must be negotiated by the person (or his representative) to whom the note was made payable, and not by a person of the same name. 1 *Hen. Bl.*, 607 ; *Mead* v. *Young*, 4 *D. & E.*, 28. When a note, however, is made payable to the name of some person not having any interest, and not intended to become a party in the transaction, whether a person of such a name is or is not known to exist, the payee may be deemed fictitious. The name is assumed merely to give form to the instrument. In such case it has been ad-

judged that a recovery can be had on the money counts by the actual creditor when money passed between the parties in the action. 3 *D. & E.*, 174; *Bennett* v. *Farnell*, 1 *Camp. N. P.*, 130. But here one of the defendants was merely a surety, and had received no money of the plaintiff. The only remaining mode to warrant a recovery is on a count on the note as payable to bearer, after alleging that the nominal payee is fictitious. This construction of such an instrument has been opposed by some eminent jurists; and in the Napoleon Code such a note is declared void: but still it has received the sanction of the Courts of Common Pleas, King's Bench, and Parliament. 1 *Hen. Bl.*, 321, *Collis* v. *Emmet; Id.*, 607, *Gibson et al.* v. *Minet;* 3 *D. & E.*, 162, *Vere et al.* v. *Lewis et al.; Chit. Bills*, 58; *Sed.*, 1 *Camp. N. P.*, 130.

" We are inclined to adopt this construction, in order to prevent the note from becoming a nullity when founded on a full and fair consideration. Such construction injures nobody, and is no more forced than to hold, that, when the name of the payee is left blank, it is the same thing as if the defendant had made the bill payable to bearer. *Cruchly* v. *Clarence*, 2 *Manl & Selew*, 91. But, to enable the plaintiff to recover under this view of the case, a new count must be filed, and, for that purpose, the verdict be set aside, and the cause stand open for a new trial. On that trial, the facts can be more fully investigated as to the person actually intended as payee in the note."

This is, perhaps, as strong a case as can be found: still a careful reading of it will discover a marked difference between it and the one under consideration. In the one, the payee not only never had any interest in the bill, but *was not particularly intended as payee :* in the other, a particular payee was designated. That the

ROGERS *v.* WARE.

want of interest in the payee does not vary the principle, is quite clearly expressed by the learned judge who wrote the opinion. He says, " Though the whole interest in the note has ever been in the plaintiff, yet it was made payable to Moses Foster or order. Hence he must claim through some person of that name who was interested as payee, if any particular person was so intended." Again : the plaintiff in that case loaned to two of the defendants the money expressed in the note, the other defendant becoming surety. The finding of the jury — that the " plaintiff alone had always possessed the note " — shows that he did not hold it as indorsee, but that the note was evidence of a money transaction between the parties. How the name of Moses Foster, rather than the name of Samuel Foster the plaintiff, came to be inserted as payee, the case as reported does not disclose. It would seem to have been the result of accident, or to have been put in to complete the form of the bill. In view of all this, and that the note might not become a nullity when founded on a full and fair consideration, the Court allowed the action to proceed as on a note payable to bearer, *no one being injured by such construction.* Another case strongly urged as in point is that of *Walter F. Pease* (impleaded with John Chester and Tarleton Jones), plaintiff in error, v. *William Dwight*, 6 *How. U. S.*, 190. The count on which judgment was given in the U. S. Circuit Court for Michigan against Pease is as follows : " For that whereas one John Chester, heretofore, to wit, on the first day of January, 1837, at Detroit in said district, made his certain promissory note in writing, bearing date the same day and year aforesaid, and thereby and then and there promised, two years from the date thereof, to pay to the order of Walter Chester and the said defendants, under the copartnership name

Rogers *v.* Ware.

and style of these defendants, Pease, Chester, & Co., one thousand five hundred dollars for value received at the Farmers' and Mechanics' Bank of Michigan, with interest; and then and there delivered the said promissory note to the defendants, who then and there, using the copartnership name and style of Pease, Chester, & Co., indorsed said note, and delivered the same to the plaintiff; and the said plaintiff avers, that the said John Chester was one of the said persons using the name and style of Pease, Chester, & Co., and that the name of the said Walter Chester was inserted in the said promissory note as one of the persons to whose order the said sum of money should be payable by the said John Chester, for the purpose, and with the intention on the part of said John Chester, of procuring the said Walter to indorse the said note for the accommodation and benefit of the said John Chester, and for no other purpose; that the said note was never delivered to said Walter Chester, and that the said Walter Chester never had at any time any interest or property or rights therein, or the money specified and mentioned therein; that the said note was by the said John Chester delivered to the said Pease, Chester, & Co. alone, who received the same and indorsed it solely, who waived the indorsement of the said Walter Chester, and, having solely indorsed the same, delivered the said note, so indorsed as aforesaid, to the plaintiff; and the said plaintiff avers, that, when the said promissory note became due," &c.

Pease demurred, " because it is not averred in said count that Walter Chester, *one of the joint* payees of the said promissory note described in said count, ever indorsed or delivered the same to the said plaintiff or any other person whatever."

Mr. Justice Wayne says, " . . . The point is, whether

ROGERS v. WARE.

a promissory note, payable to the order of several per-sons, one of whom inceptively refused to be a payee of it, and who was treated by the drawer and other payees, both in the delivery of the note and its negotiation, as no party, and having no interest in it, can be trans-ferred by the indorsement of the real payees, so as to give the ownership of it to the indorsee, and a right of action upon it, *ex directo*, under the statute of 3 & 4 *Ann. C.*, 9. . . . The statute requires the transfer to be made by the indorsement of the person to whom the note is payable; and the interpretation of it is, that, when a note is payable to the order of several persons not in partnership, all must separately sign their names as indorsees; the object being, that, before an indorsee shall recover the contents of the note, he shall show he had acquired a property in it by a transfer by those who were the original payees, or from others who were their indorsees. The statute is not merely a form requiring all the payees to indorse, but a substantial requisition, upon the presumption that all the payees upon the face of the paper have an interest in it, and that they have indorsed it. We have, then, the rule, and the reason of the rule; and it seems to me, that to permit it to comprehend a case of an understanding between the real parties, because a name had been mis-takenly inserted, or had been inadvertently left upon the face of the paper, when the note was delivered to the real payees by the drawee, would be to wrest the statute out of its meaning, and to sacrifice the substan-tial intention of it merely to form. The statute meant to deal with the real parties. The omission to erase the name in such a case does not lessen the drawer's obligation to pay his note to the real payees, or their right of action upon it against the drawer of a note of hand. If, then, the real payees shall indorse the note to

a third person, they are within the words of the statute as indorsees; and the indorsee, in an action against them or the drawer, may be permitted to prove the real character of the undertaking by showing that the name of a person had been inadvertently left upon the paper as a payee who had refused to be such, and who had been waived as a party to the note, both by the drawee and the real payees, when the contract had been completed between them by the delivery of the note. . . .

" It would be really going very far to say that the statute giving the indorsee a right of action *for such a sum of money, either against the person signing such note or against any of the persons who indorsed the same,* did not mean to be exercised, because a person's name was upon the face of the paper who never had been a party to it. No such a decision has been made. It may be because no case of this kind has ever occurred before. We can find none like it. In the absence of all authority against our conclusion, we must take upon ourselves the responsibility of announcing it as an original application of the statute to that case, and for any case of like kind which may occur, without intending to go further."

This case also differs widely from the one at bar. When John Chester drew the note payable " to the order of Walter Chester, and Pease, Chester, & Co.," his intention, no doubt, was to secure the indorsement of Walter Chester. But the note did not become operative till it was negotiated or put into use. *Catlin* v. *Gunter* 11 *N. Y.,* 368. When that transpired, all design of having Walter Chester become a party to the note had been dismissed, and it was so understood by all the parties to the transaction. His name was occupying but a space on the paper, when, to conform to the un-

ROGERS v. WARE.

derstanding of the parties, it should have been erased. Of the justness of the decision there can be no doubt. John Chester, a member of the firm of Pease, Chester, & Co., wishing to obtain money, first proposed to have his note indorsed by Walter Chester and his own firm. Dwight, it seems, consented to loan the money upon the indorsement of the firm alone. In an action to recover the money so lent, it illy becomes the firm, or any member of it, to set up the want of Walter Chester's indorsement, when it had been expressly waived by them. This opinion proceeds upon the assumption that Walter Chester was no payee at all, rather than that he was either a real or fictitious one. There is no suggestion that this was a note payable to bearer. On the contrary, it is treated as payable to Pease, Chester, & Co., the true and sole payees; and, upon their indorsement being shown, a recovery was sustained.

The case of *Hortsman* v. *Henshaw et al.*, 11 *How. U. S.*, 177, cited on the same side, will be found to proceed upon reasoning which has no place in the case before us. There Fiske and Bradford, a mercantile firm in Boston, drew their bill of exchange upon Hortsman of London, to the order of Fiske and Bridge. The drawers, or one of them, placed the bill in the hands of a broker, with the names of the payees indorsed upon it, to be negotiated; and it was sold to the defendants in error, *bona fide*, and for full value. It was accepted, and paid at maturity. It turned out that the indorsement was forged; by whom it does not appear. Shortly afterwards the drawers became insolvent, and the drawee brought this action against the defendants to recover back the money paid: it was held that he could not recover. It is unnecessary to repeat the opinion given by Chief Justice Taney. The point made is, that the drawers, having put the bill in circula-

tion, with the names of the payees indorsed thereon,. must be understood as affirming the genuineness of such indorsements. The acceptor being presumed to accept upon the strength of the funds of the drawee, and having paid to the rightful holder of the bill, — to him who could have recovered from the drawee should the bill have been dishonored, — he can look only to the drawee for a return of the money used in the payment of the bill.

With the case of *Coggill* v. *The American Exchange Bank*, *supra*, I will have noticed the principal cases relied on by the defendant in error. This case is very much like the last. Shapley & Billings (through the wrong of one of them) drew a bill, in the name of the firm, on the plaintiff, for fifteen hundred dollars, payable to the order of Truman Billings. The name of Truman Billings, as well as that of Trüman Billings, jun., was forged on the back of the bill; and it was passed by one of the firm to the Bank of Central New York for discount, and was cashed without any suspicion of the forgery. This bank indorsed the draft, and sent it to the defendant for collection. The American Exchange Bank collected it of the plaintiff, who, learning of the forgery, and the absconding of one of the firm of Shapley & Billings, brought his action to recover the amount paid the defendant, upon the ground that the defendant got no title to the bill through the forgery. As in the case of *Hortsman* v. *Henshaw*, *supra*, the Court holds, that, inasmuch as Shapley & Billings negotiated the bill with the names of the payees indorsed, they affirmed the genuineness of the signatures; and, upon the plainest principles for maintaining honesty and fair dealing, they would have been estopped from controverting it. Coggill, the acceptor, deriving his title through those who could maintain an action against Shapley & Billings, must look to

them. Judge Bronson, who delivers the opinion in this case, in remarking upon the rights and remedies these banks had, in case of the drawee refusing to accept the bill, says, " There is also another form of declaring, in which the bank might have recovered on this bill. As the payee had no interest, and it was not intended that he should ever become a party to the transaction, he may be regarded, in relation to this matter, as a nonentity; and it is fully settled, that when a man draws, and puts into circulation, a bill which is payable to a fictitious person, the holder may declare and recover upon it as a bill payable to bearer." . . . (Citing the leading English cases, to which reference has been made.)

" The point had been adjudged, that, when the maker of a promissory note puts it into circulation with a forged indorsement of the name of the payee upon it, a *bona-fide* holder may sue, and recover against the maker, as upon a note payable to bearer (*Fort* v. *Meacher*, 3 *Hill's S. Car.*, 227, and *Riley's Law Case*, 248); and the same rule has been applied where the payee had no interest in the note, and it was not intended that he should become a party to the transaction. *Foster* v. *Shattuck*, 2 *N. H. Rep.*, 446. Notwithstanding what was said in *Dana* v. *Underwood*, 19 *Pick.*, 99, I think this sound doctrine; and it is applicable to the case of a bill put into circulation by the drawer with a forged indorsement upon it, — a *bonâ-fide* holder may treat it as a bill payable to bearer." This case is wholly unlike the one we are considering, going more particularly on the ground that the drawers negotiated the bill with the payee's name, or what was taken to be the indorsement of the payee, upon it. But what is here said by this learned jurist concerning the want of interest in a payee, that will authorize a recovery as upon a bill payable to bearer, is qualified, in common with all cases of the kind, with the further con-

sideration, that " it was not intended the payee should
ever become a party to the transaction," as was well
illustrated in that case.    There undoubtedly was not the
remotest intention in the mind of the drawer of the bill
that Truman Billings should ever possess or indorse it.

Passing from authority to what is urged as the reason
of the case, it is submitted, whether it is reasonable to
insist upon the indorsement of him who has no interest
or motive to indorse the draft, and who could not ever
be compelled so to do; and whether, having issued a
draft in proper form, but to the order of a payee who
had no interest in it, as he well knew, Ware should not
be held to the same liability as though he had known the
payee to be purely a fiction ; and that he designed to pay
some one the amount of the draft, and as Allen is shown
to possess no interest in it whatever, Ware should not
object to paying it to him who has paid full value for it.
This is somewhat plausible, but, as a matter of conscience,
would be greatly enforced if it could be truthfully
added, that Ware had received a consideration for the
draft.   Were this the fact, I apprehend the law is not
wanting in ways in which Rogers & Co. might obtain a
return of the money they have advanced.   In order to
exclude proof that the fact is otherwise, they were forced
to rest their rights, if any, upon the rules of commercial
law governing negotiable paper.   These rules may not
always work complete justice ; but a regard for the con-
fidence and security which should obtain in mercantile
transactions of this kind demands their rigid application
when a proper case arises.   Ware's engagement, when
he executed and delivered the bill in question, was to
pay to the order of William T. Allen, unless Allen was
a fictitious person.   Whether he might not as well pay
to Rogers & Co. is not the question.   He can rely upon
the letter of his obligation ; and, if this is kind to him,

it is his fortune. To hold Allen, under the circumstances of this case, a fictitious payee, is to go beyond any authority I have been able to discover, or any which I believe to exist; and the evident caution which has marked every departure from the rule — that the indorsement of the payee named in the bill of exchange must be shown to establish title in the holder — admonishes us against any extension of the exception. The early cases show that the payee had no existence really, — a fact which was understood by the parties. Later cases include the names of payees who do exist, but who never had any interest in the bill, *and who it was intended never should become parties to the transaction..* Here Allen did exist; was designated by the applicant for the draft as the person to whose order he would have it payable. Ware knew of such a person, his business, and place of business; and, whatever may have been the reserved intention of the applicant as to Allen ever becoming interested in the draft, there can be no doubt that Ware had no other idea than that the bill would be paid to Allen or his order. If Allen, although possessing at the time of delivering the draft no present interest in it, was not intended by the drawer as a party to it, I certainly cannot conceive of a case where one might be so intended. To hold Allen a fictitious payee in this case is to declare the doctrine broadly, that, when a bill or note is made payable to the order of a payee who at the time has no actual interest in it, it may be negotiated and recovered upon as a note or bill payable to bearer. This would be a most dangerous rule indeed, — one destroying the chief value of bills of exchange. As an example, suppose the person representing himself to Ware as Whiteman to be an honest man, applying in good faith for a draft payable to the order of William T. Allen, of the firm of Day, Allen, & Co., of Chicago, wholesale grocers,

## Rogers *v.* Ware.

with a view of purchasing of them that amount of groceries ; suppose further, that, instead of going personally, he had intrusted the draft to an agent, who should forge the name of Allen, and pass it to an innocent holder for value : under the rule contended for, because Allen had no actual interest in the bill, and it being the same as a bill payable to bearer, of course the holder could recover. Illustrations without number might be added. Bills are daily made payable to persons who have no interest in them in fact, or whose interest, like Allen's, is but potential. It is not enough to answer, that, inasmuch as Ware knew Allen had no interest in the bill, he must have known that the real interest in it resided in Whiteman, the purchaser. Such interest in Whiteman rested, not on any principle of commercial law, but upon the special circumstances of the case. Had Whiteman returned immediately, and expressed a change of purpose, and returned the bill, there would have been no impropriety in Ware returning him what had been paid, if any thing, as he might have compelled a return of what he may have paid, had Ware refused, in an action as for money paid and received. Rogers & Co.'s rights are but the rights of equitable assignees of Whiteman. In such case they might recover what Whiteman paid, be the same more or less ; but their rights under the law merchant are entirely different. Whiteman, or he who represented himself such, applied for no draft payable to a fictitious payee, but chose to have one made payable to the order of a person known to, and in contemplation of, the parties when it was executed and delivered. To give title to the holder of such a bill, the indorsement of the payee must be shown. The defendants in error having failed to show the indorsement of Allen, the jury should have been instructed to return a verdict against them. If authority were needed to support this

ROGERS v. WARE.

view, the case of *Morgan* v. *Bank of the State of New York*, 1 *Duer*, 434, is one very nearly in point. This was an action brought by Morgan to recover some seven hundred and sixteen dollars, deposited by the plaintiff with the defendants. It was admitted that the plaintiff was entitled to a judgment for that amount, unless he could be charged with the amount of two checks, drawn by him upon the defendants, payable to the order of George Corlies & Co., the indorsements on which were alleged to be forgeries. On the trial the checks were produced, and the signature of the plaintiff admitted. G. W. Corlies, one of the firm of G. W. Corlies & Co., testified that the indorsement of G. W. Corlies on the back of the checks was not in the handwriting of any member or any clerk of the firm, and that the firm had no dealing with Morgan, and that he owed them nothing, and that the checks were never delivered to, nor in the possession of, the firm. Morgan recovered in the Court below, and the judgment was sustained on appeal. Justice Paine, delivering the opinion of the Court, says, " Although no explanation was given, upon the trial, of the purposes for which the checks were drawn, nor of the circumstances under which they passed from the possession of the plaintiff, it seems to us there is no reasonable ground upon which the right to recover in this action can be doubted. When a bill or check is payable to order, to justify the application to its payment of the funds of the drawer, it must be proved that the required order was in fact given : in other words, it must be proved that the indorsement was genuine ; and the burden of this proof rests upon the person or bank upon whom the bill or check is drawn. Where the indorsement of the payee is shown to be forged, the payment of a check by the bank is in its own wrong, and can never be set up as a defence against the person

whose rights it violated, or whose funds are misapplied. In all such cases, the bank must be liable to some person to the extent of such wrongful payment. If the check at the time was the property of the payee, it is to him that the bank is liable; but if it had never passed into his hands, and he had no interest in it whatever, — and such are the facts in the case before us, — they are the funds of the drawer that have been misapplied, and which the bank is bound to replace. It is the plaintiff, therefore, who is entitled to maintain this action.

" It is impossible for us to treat these checks as payable to bearer or to a fictitious person. As the payees are real persons, the presumption of law is that the checks were drawn with the intent of vesting the title in them, and them alone. Consequently it was only from them that a title could be derived, and only be a title given by them, and evidenced by their indorsement that a valid payment could be made. As the checks were never delivered to them, and they were not the holders of them at any time for value or otherwise, it seems to us a necessary inference that it was by the fraud of some third person that the checks were obtained and put into circulation. The loss resulting from this fraud the defendants must sustain, and, against its perpetrator, must seek their remedy.

" The supposition that the plaintiff delivered the checks to some third person, to whom he gave authority to put them into circulation by indorsing the names of the payees, is something worse than gratuitous. We reject it wholly : there is no proof of such delivery, and the plaintiff could give no such authority ; and assuredly we will not impute to him, in order to protect the defendant, the design of enabling a third person, by means of a forgery, to effect a fraud."

Rogers *v.* Ware.

This case was taken from the general term to the Court of Appeals, and there affirmed. 1 *Keyes*, 404.

In the rulings upon the trial, there was error; and the judgment must be reversed, and a new trial ordered.

Judgment reversed, and a new trial ordered.