SEABOARD NATIONAL BANK, Respondent, *v.* THE BANK OF AMERICA, Appellant.

1. BANKS — RELATION OF BANK AND DEPOSITOR.  The relation between a bank and a depositor being that of debtor and creditor, the bank can justify a payment on the depositor's account only upon the actual direction of the depositor.

2. NEGOTIABLE INSTRUMENTS — FORGED INDORSEMENT — INEFFECTUAL TO PASS TITLE THERETO.  If a signature upon a negotiable instrument " is forged or made without authority of the person whose signature it purports to be," no title to the instrument, or the proceeds thereof, "can be acquired through or under such signature" (Negotiable Instruments Law, L. 1897, ch. 612, § 42); and where a bank has collected a draft from the drawee, upon which the payee's indorsement was forged, it cannot retain the money, since it had no title to the instrument upon which the money was paid.

3. SAME — ALLEGED NEGLIGENCE OF DRAWER IN ISSUING DRAFT — WHEN IT IS NOT A DEFENSE TO ACTION TO RECOVER MONEY PAID ON FORGED INDORSEMENT.  Where a draft, on which the indorsement of the payee was forged, was collected from the drawee by a bank, which the drawee thereafter sued to recover the amount paid, an allegation by the defendant, that the drawer was negligent in failing to discover that the check, in consideration of which the draft was issued, was also forged, is immaterial and does not preclude a recovery by the drawee, where no act of the bank in which the forged draft was deposited, or of the bank which collected it from the drawee, was induced by any act, representation or admission of the bank which drew the draft.  The sole question to be determined is whether the draft was legally collected from the drawee, but that transaction had no legal connection with the fraud by which the draft was obtained, and is, therefore, not dependent in any way upon the facts relating to the consideration for the draft or whether it is real or fictitious.

4. SAME — WHEN DRAFT PAYABLE TO FICTITIOUS OR NON-EXISTING PERSON.  Where a bank draft, procured by the fraudulent act of an employee of a firm having an account with the drawer, was made payable to an existing partnership and delivered to such employee, who thereafter forged the indorsement of the partnership and deposited the draft to his own account in another bank, it cannot be held that the draft was payable to a fictitious or non-existing person, within the meaning of the statute (Negotiable Instruments Law, L. 1897, ch. 612, § 28, subd. 3), and, therefore, payable to bearer, and that, consequently, writing the signature of the payee on the back of the draft was not in legal effect a forgery and not necessary to protect the drawee in its payment of the draft.  It is only

when a person making a negotiable instrument knows that he is making it payable to a fictitious or non-existing person that it can be treated as payable to bearer.

5. SAME — IRREGULAR INDORSEMENTS — VALID ONLY WHEN MADE BY ACTUAL OWNER OF INSTRUMENT — DRAFT OBTAINED BY FRAUD — INDORSEMENT BY FRAUDULENT HOLDER THEREOF. Assuming that the owner of a bank draft, payable to an existing payee, may, while it remains in his possession and before the payee has obtained any vested interest therein, divert it from the purpose for which it was intended, and, for that purpose or for the purpose of returning the amount to his bank account, may indorse the name of the payee thereon without being liable for the crime of forgery, such an irregular indorsement can be sustained only when the person, so indorsing the draft, is the actual owner thereof. In issuing the draft in question, payable to an existing firm, and delivering it to the forger, the drawer dealt with the forger solely as the representative of his employer, and not as an individual, and he did not become the owner of the draft, with any rights therein as owner, and, hence, his indorsement of the payee's signature was a forgery and could not convey any title to a subsequent holder.

*Seaboard Nat. Bank* v. *Bank of America*, 118 App. Div. 907, affirmed.

(Argued May 25, 1908; decided October 6, 1908.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered March 12, 1907, affirming a judgment in favor of plaintiff entered upon a verdict directed by the court and an order denying a motion for a new trial.

Three persons doing business under the firm name of E. V. Babcock & Co., at Pittsburg, Pa., were depositors in the Federal National Bank of that city. One Pennock was the auditor and chief bookkeeper and known by said bank to be in the employ of said firm. On September 17, 1904, said Pennock went to said bank and presented a check purporting to be signed by said firm drawn upon said bank payable to the order of "N. Y. Draft" for $2,000 and requested said bank to give him a New York draft for $2,000, payable to the order of "Carroll Bros." A draft was drawn by said bank upon the plaintiff, a banking institution in the city of New York, and delivered to said Pennock. Said Pennock thereupon went to the Mellon National Bank of Pittsburg,

Pa., in which bank he had a personal account, and he thereupon signed the name of "Carroll Bros." on the back of said draft and deposited the same to his account in said Mellon National Bank.    The draft was indorsed by the Mellon National Bank and forwarded to its correspondent, the defendant, in the city of New York.    The defendant collected said draft of the plaintiff through the Clearing House in the city of New York in the usual course of business.    The check upon the Federal National Bank, which purported to be signed by E. V. Babcock & Co., was a forgery.    "Carroll Bros." is a partnership composed of two members doing business in Pennsylvania and it had dealings from time to time with said E. V. Babcock & Co., but in the dealings with said E. V. Babcock & Co., Carroll Bros. were always indebted to E. V. Babcock & Co.    The indorsement of the name Carroll Bros. upon said draft was without the knowledge or authority of said Carroll Bros., said E. V. Babcock & Co., or of said Federal National Bank.    Subsequently E. V. Babcock & Co. acquired knowledge of the transactions relating to said check and draft and they presented proof of the facts to the Federal National Bank and the amount of the check which had theretofore been charged to the account of E. V. Babcock & Co., was recredited to it.    The Mellon National Bank refused to make restitution to the Federal National Bank.    The Federal National Bank had at all times mentioned an active account with the plaintiff and the plaintiff charged the amount of said draft so paid by it to the Federal National Bank and returned the draft as a voucher to it.    When the Mellon National Bank refused to make restitution to the Federal National Bank it forwarded the draft to the plaintiff and the plaintiff restored to the Federal National Bank the amount it had charged to it by reason of said draft and thereupon tendered the draft to the defendant and demanded restitution of the amount paid by the plaintiff to the defendant on said draft which demand was refused.    Said draft was made, executed and delivered by said Federal National Bank upon the request of said Pennock who purported to represent E. V. Babcock & Co., and said Federal

National Bank handed said draft to said Pennock accordingly. Prior to the time when the Federal National Bank ascertained the true facts about said check and draft the amount of the draft credited by the Mellon National Bank to said Pennock was withdrawn from the bank and said Pennock had died insolvent. This action was brought to recover the amount of said draft and judgment was entered in favor of the plaintiff, from which judgment an appeal was taken to the Appellate Division of the Supreme Court where the judgment was unanimously affirmed, and from such judgment of affirmance an appeal is taken to this court.

*Charles E. Rushmore* for appellant. · The defendant acquired good title to the check in controversy, and the indorsement "Carroll Brothers" is not a forgery in the legal sense. (*Shipman* v. *Bank*, 126 N. Y. 330; *Talbot* v. *Bank of Rochester*, 1 Hill, 297; *Coggill* v. *A. E. Nat. Bank*, 1 N. Y. 113; *Turnbull* v. *Bowyer*, 40 N. Y. 456; *Phillips* v. *M. Nat. Bank*, 140 N. Y. 561; *M. Nat. Bank* v. *Hall*, 83 N. Y. 345; *Hutchinson* v. *M. Co.*, 150 N. Y. 257; *Justh* v. *Nat. Bank*, 56 N. Y. 478; *Stephens* v. *Board of Education*, 79 N. Y. 183; *G. Nat. Bank* v. *State*, 141 N. Y. 379; *Ludig* v. *Nat. Bank*, 80 N. Y. 104.) The Federal Bank was itself at fault, and by its gross negligence made the fraud possible. (*C. Nat. Bank* v. *Tradesmen's Bank*, 173 N. Y. 272; *L. T. & T. Co.* v. *Bank*, 196 Penn. St. 234; *Bank of Commerce* v. *Union Bank*, 3 N. Y. 230.) The Seaboard National Bank having voluntarily restored the money to the Federal National Bank, and having a good defense to the claim of the latter on the ground of the latter's negligence, it cannot recover the amount of the check from the defendant. (*V. W. Nat. Bank* v. *F. Nat. Bank*, 6 Ohio Cir. Ct. 130.)

*Herman Aaron* for respondent. The defendant, by the act of collecting the draft in question as the ostensible owner thereof, guaranteed to the plaintiff the genuineness of the whole of the instrument, including its indorsements, except-

ing only the signature of the drawer, and in case of forgery became liable to refund to the plaintiff the amount received on the draft on the ground that it had received from the plaintiff to its own use money under a mistake of fact. (*White* v. *C. Nat. Bank*, 64 N. Y. 319; *M. Nat. Bank* v. *Lloyd*, 90 N. Y. 535 ; *Nat. P. Bank* v. *S. Nat. Bank*, 114 N. Y. 28 ; *Nat. P. Bank* v. *Eldred Bank*, 90 Hun, 285 ; 154 N. Y. 769.) That the defendant received from the plaintiff, under a mutual mistake of fact, money which the defendant had no right to receive and which the plaintiff had no right to pay and charge to its depositor, is clear. (*Crawford* v. *W. S. Bank*, 100 N. Y. 53.) The claim that Carroll Brothers were fictitious payees cannot be sustained. (*Shipman* v. *Bank of State of N. Y.*, 126 N. Y. 330.) There is no negligence in the case affecting the defendant's liability. (*White* v. *C. Nat. Bank*, 64 N. Y. 319; *People* v. *Bank of N. A.*, 75 N. Y. 561.)

CHASE, J. The Federal National Bank was a depositor with the plaintiff. The relation existing between a bank and a depositor being that of debtor and creditor the bank can justify a payment on the depositor's account only upon the actual direction of the depositor. (*Critten* v. *Chemical National Bank*, 171 N. Y. 219.)

It is provided by the Negotiable Instruments Law that " Where a signature is forged or made without authority of the person whose signature it purports to be, it is wholly inoperative, and no right to retain the instrument, or to give a discharge therefor, or to enforce payment thereof against any party thereto, can be acquired through or under such signature, unless the party, against whom it is sought to enforce such right, is precluded from setting up the forgery or want of authority." (L. 1897, ch. 612, sec. 42.)

If it was necessary for Carroll Bros. to indorse the draft before it could be paid by the plaintiff to the account of the Federal National Bank, then it was never so indorsed because Pennock's act was a forgery and wholly inoperative. The

defendant cannot retain the money paid to it by the plaintiff upon such unindorsed draft for the very excellent reason that it had no title to the instrument upon which the money was paid.

It is further provided by the Negotiable Instruments Law as follows:

"The instrument is payable to bearer:

" 1. When it is expressed to be so payable; or

" 2. When it is payable to a person named therein or bearer; or

" 3. When it is payable to the order of a fictitious or non-existing person, and such fact was known to the person making it so payable; or

" 4. When the name of the payee does not purport to be the name of any person; or

" 5. When the only or last indorsement is an indorsement in blank." (Section 28.)

It is claimed by the defendant that the draft was payable to a fictitious or non-existing person, and consequently writing the signature of Carroll Bros. on the back of the draft was not in legal effect a forgery, and not necessary to protect the plaintiff in its payment. The defendant also claims that the Federal National Bank was negligent in not discovering that the check of E. V. Babcock & Co. presented to it by Pennock was forged, and that such negligence should prevent the plaintiff from recovering against the defendant in this action.

The draft was obtained from the Federal National Bank by fraud. It was a fraud perpetrated by the same person who within a short time after perpetrating it fraudulently obtained the money upon the draft from the Mellon National Bank, but the fraudulent acts so far as they concerned persons other than Pennock were wholly unrelated. The Federal National Bank was the only one concerned in the consideration accepted by it in issuing the draft. The question in this action, therefore, is not dependent in any way upon the facts relating to the consideration for the draft or as to whether

the consideration for the draft was real or fictitious, but whether upon all the facts disclosed the draft was legally collected from the plaintiff by one other than its payee, or as ordered by it. The transaction between the plaintiff and the defendant had no legal connection with the fraud by which Pennock obtained the draft from the Federal National Bank.

We are of the opinion that the alleged negligence on the part of the Federal National Bank is immaterial in this action because no act of the Mellon National Bank or of the defendant was induced by the acts, representations or admissions of the Federal National Bank. We also think that the defendant is wrong in its contention that the draft was payable to bearer as defined in the Negotiable Instruments Law. It is only when a person making an instrument knows that he is making it payable to a fictitious or non-existing person that it can be treated as payable to bearer.

The appellant asserts that a person to whom a draft made payable to a third person is issued, can, while he remains the owner thereof, divert it from the purpose for which it was intended, and that for the purpose of such diversion, or of returning the amount of the draft to his account in the bank, he can indorse the payee's name thereon without being liable for the crime of forgery.

Assuming that in cases where the draft has never been delivered to the payee, or the payee has not in some way obtained a vested interest therein, the appellant is right in its claim, the assumed authority to so indorse the payee's name thereon does not arise because the draft is payable in legal effect to bearer, but because of the fact that such an act of the owner is harmless. Such means of recalling a proposed transaction or of changing the use to be made of a draft, is sustained upon the right that a person has to do as he pleases with his own and for that reason until the rights of others in the draft have become vested the acts of the owner therewith are innocent and colorless. An irregular form of indorsement of commercial paper is frequently observed and approved when such paper is indorsed only for deposit to the credit of

the payee. Actual ownership of commercial paper and use thereof by the owner are essential to sustain irregular indorsements.

The bank in issuing the draft in question dealt with Pennock, but with Pennock as the representative of E. V. Babcock & Co. and not with him individually. Pennock did not purport to act individually or to exercise individual intention. The draft issued was the obligation of the Federal National Bank. It was payable to a real partnership. The conceded transaction, so far as it was expressed in acts or words, including the delivery of the check charging the amount thereof to E. V. Babcock & Co., and the receipt of the draft in return for the check, was not with Pennock individually and he did not become the owner of the draft with any rights therein as owner.

The secret intention of a criminal contrary to his express intention and the avowed purpose for which he obtains possession of a draft does not give the criminal ownership of the draft or a legal right to change a draft payable to a real payee to one payable to bearer. There is no presumption arising from the facts proven that the name Carroll Bros. was intended as a fictitious or non-existing payee. Such intention to be effective must necessarily arise from knowledge and exist as an affirmative fact in the mind of the drawer of a draft at the time of its delivery.

There is nothing in this case to estop the plaintiff from controverting the genuineness of the indorsement of the draft in controversy as in *Coggill* v. *American Exchange Bank* (1 N. Y. 113), where one of the members of a partnership, the makers of a draft, put it into circulation with the forged indorsement of the payee upon it, or as in *Phillips* v. *Mercantile National Bank* (140 N. Y. 556), where the person who forged the name of the payee was the cashier of the defendant empowered to bind the bank by his checks.

The legal effect of making a note or bill payable to a fictitious person was stated in the Revised Statutes, part 2, chapter 4, title 2, section 5, as follows : " Such notes, made

3

payable to the order of the maker thereof, or to the order of a fictitious person, shall, if negotiated by the maker, have the same effect, and be of the same validity, as against the maker and all persons having knowledge of the facts, as if payable to bearer."

Prior to the enactment of the Negotiable Instruments Law the language of which makes it clear that if an instrument is to be deemed payable to bearer, although in form payable to a named person, that the intention to make the instrument payable to a fictitious or non-existing person must exist with the maker thereof, this court in *Shipman* v. *Bank of the State of New York* (126 N. Y. 318), referring to the rule stated in the Revised Statutes, said : " We are of the opinion upon examination of the authorities cited by counsel on both sides that this rule applies only to paper put into circulation by the maker with knowledge that the name of the payee does not represent a real person. The maker's intention is the controlling consideration which determines the character of such paper. It cannot be treated as payable to bearer unless the maker knows the payee to be fictitious and actually intends to make the paper payable to a fictitious person."

The court further say : " Bedell (the employee who signed the names of the payees) of course knew that the payees were fictitious, but he was not acting within the scope of his employment but in carrying out a scheme of fraud upon the plaintiffs, and under such circumstances his knowledge cannot be imputed to his principals."

Selover in his work on Negotiable Instruments Law (page 70) says : " The doctrine that a check or bill made payable to a fictitious person is payable to bearer and negotiable without indorsement if the fictitious character of the payee was known to the parties, originated in England, and in each of the cases holding the doctrine the decision was based on the fact that the acceptor knew at the time of his acceptance that the instrument was payable to a fictitious person. If the drawer or maker of an instrument did not know that the payee was a fictitious or non-existent person, and did not intend to make

the paper payable to such person, paper payable to the order of such person cannot be treated as payable to bearer, for the intention of the maker or drawer is the test."

Bunker on Negotiable Instruments in his note to a section of the Negotiable Instruments Law of Michigan (section 11), corresponding to and the same as section 28 of the Negotiable Instruments Law in this state, compares the Bills of Exchange Act of England (section 7) with the statute of Michigan, and says : "The difference between the two statutes is important. The element of knowledge is the distinguishing feature. Under the English statute the paper is payable to bearer if the payee be a fictitious or non-existing person. Under the American statute paper payable to a fictitious or non-existing person is not payable to bearer unless the maker or drawer knew that the payee was a fictitious or non-existing person. Under the English statute the fact governs ; under the American statute the fact coupled with knowledge governs. Thus there has been carried into the two statutes the differences heretofore existing in the authorities."

In Crawford's Annotated Negotiable Instruments Law it is said in a note to section 28, referring to the case of *Shipman* v. *Bank of the State of New York* (*supra*), and quoting from the opinion : " Hence if the maker or drawer supposes the payee to be an actually existing person (as for instance, where he is induced by fraud to draw the instrument to the order of a fictitious person whom he supposes to exist) the instrument will not be payable to bearer, and no person can acquire the title thereto by delivery. And where the instrument is drawn payable at a bank the bank cannot charge the same to the account of its customer, since the instrument is not in such case payable to bearer and the indorsement is a forgery."

In Eaton and Gilbert on Commercial Paper it is said : " Under the common law a bill payable to a fictitious person or his order was neither in effect payable to the order of the drawer nor to the bearer unless it was shown that the circumstance of the payee being a fictitious person was known to

the acceptor.   To show that the acceptor was aware that the payee was a fictitious person, evidence is admissible of the circumstances under which he accepted other bills payable to fictitious persons.

"The fictitiousness of the maker's direction to pay does not depend upon identification of the name of the payee with some existing person, but upon the intention underlying the act of the maker in inserting the name.   The rule as to an instrument payable to the order of a fictitious or non-existing person applies only to paper put in circulation by the maker with knowledge that the name of the payee does not represent a real person.   The maker's intention is the controlling consideration.   It cannot be treated as payable to bearer unless the maker knows the payee to be fictitious and actually intends to make the paper payable to the fictitious person."

Daniel on Negotiable Instruments, in a note to a section (section 139), in which he says that lack of knowledge of the maker of the fictitious character of the payee is not a defense against a *bona fide* holder, refers to a different rule in this state, and after calling attention to our Revised Statutes, says : "The Court of Appeals, construing this statute, held that such paper cannot be treated as payable to bearer unless it was put in circulation by the maker with knowledge that the name of the payee does not represent a real person."

And further, in a note to the same section, he says :  "But in New York by statute the maker is not bound to an indorsee even, unless he, the maker, knew of the fiction at the time of signing."

It does not appear that the Federal National Bank knew Carroll Bros. was a fictitious or non-existing person, or intended that the instrument should be payable to bearer.

The judgment should be affirmed, with costs.

CULLEN, Ch. J., GRAY, HAIGHT, VANN, WERNER and WILLARD BARTLETT, JJ., concur.

Judgment affirmed.