(79 Misc. Rep. 212.)

### KOBRE v. CORN EXCHANGE BANK.

(Supreme Court, Appellate Term, First Department. February 7, 1913.)

BANKS AND BANKING (§ 148*)—CHECKS—PAYMENT ON FORGED INDORSEMENT OF PAYEE.

 Where plaintiff, discounting a note made by S. to M. and B., indorsed in blank in the name of M. and B., and presented by V., gave to V. a check payable to M. and B., intending to deal only with M. and B., and the bank paid it on its indorsement in the name of M. and B., forged by S., as had been the indorsement of the note, it could not charge the payment to plaintiff, even if he was negligent in delivering the check to V.; the circumstances not clearly charging him with knowledge that V. was an impostor.

 [Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 438–452; Dec. Dig. § 148.*]

Appeal from City Court of New York, Special Term.

Action by Max Kobre against the Corn Exchange Bank for refusal to pay over the amount of a deposit made by plaintiff with defendant. From an order setting aside a verdict for plaintiff, rendered by direction of the court, plaintiff appeals. Reversed, and verdict reinstated.

Argued January term, 1913, before SEABURY, LEHMAN, and PAGE, JJ.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Feltenstein & Rosenstein, of New York City (Moses Feltenstein, of New York City, of counsel), for appellant.

Katz & Sommerich, of New York City (Otto C. Sommerich and L. E. Schlechter, both of New York City, of counsel), for respondent.

LEHMAN, J.   The plaintiff carries on business as a banker under the name of Max Kobre's Bank.   On March 26th his cashier issued a check in proper form, drawn on plaintiff's account in the defendant bank to the order of Miller & Bonime.   This check was presented to the defendant bank through the clearing house by the Metropolitan Bank.   At that time it bore indorsements in the name of Miller & Bonime, S. Bonomowitz, Syrkin & Back, and the Metropolitan Bank. The check was paid by the defendant, and the amount charged to plaintiff's account.   At the trial the plaintiff showed that the firm of Miller & Bonime was composed of Harris A. Miller and Abraham Bonime, and that they had never indorsed the check themselves, nor authorized any other person to indorse it for them.

"The relation existing between a bank and a depositor being that of debtor and creditor, the bank can justify a payment on the depositor's account only upon the actual direction of the depositor." Critten v. Chemical National Bank, 171 N. Y. 219, 63 N. E. 969, 57 L. R. A. 529.

If it was necessary for Miller & Bonime to indorse the draft before it could be paid by the defendant for the plaintiff's account, then the plaintiff has made out a complete cause of action, because it is undisputed that their apparent indorsement was not made by them. If they were the actual payees of the check, then, of course, their pretended signature could give the subsequent purchasers no right to enforce payment of the check.   Section 42, Negotiable Instrument Law (Consol. Laws 1909, c. 38).   Since they were named as payees, and their signature was forged, the defendant has failed to make payment according to the written direction of the plaintiff, and cannot charge this payment to the plaintiff's account, unless it proves either that the payment was made to the payee actually intended to receive payment though improperly described, or that the conduct of the drawer of the instrument has been such as to impose a liability upon him beyond his intent.   Gallo v. Brooklyn Savings Bank, 199 N. Y. 222, 92 N. E. 633, 32 L. R. A. (N. S.) 66.

For this purpose the defendant has presented the following testimony:   It shows that the plaintiff's cashier, who signed the check, delivered it to a Mr. Vladower.   The check was given in discount of a note for $500.   This note purported to be made by the Metropolitan Novelty Company, by Solomon Bonomowitz, president, to their own order, and bore their indorsement in blank, and also a blank indorsement in the name of Miller & Bonime.   The latter indorsement was forged.   Vladower gave plaintiff the note when he received the check. The plaintiff's cashier did not know Solomon Bonomowitz.   Apparently Vladower delivered the check to Bonomowitz, who forged the indorsement of Miller & Bonime, and then discounted the check with Syrkin & Back.   I fail to see any theory upon which these facts prove any defense to plaintiff's cause of action.

The defendant urges that the real question in the case is not "whether the indorsement on the check of the alleged payee was a forgery, but rather was it intended that Miller & Bonime were to receive the proceeds of the check of Bonomowitz." I can find absolutely no evidence that the plaintiff ever intended that Bonomowitz should receive the proceeds of the check. The plaintiff did not make the check payable to Bonomowitz, but to Miller & Bonime. It is shown that Miller & Bonime were an actual firm, and their name inserted as payee was not intended to be a fictitious name. In this respect the case differs from the case of Phillips v. Mercantile National Bank, 140 N. Y. 556, 35 N. E. 982, 23 L. R. A. 584, 37 Am. St. Rep. 596. The plaintiff did not know Bonomowitz, and did not intend to make a check payable to him. He did not intend to give that check in discount of a note of which Bonomowitz was the actual owner; but he made that check payable to the firm who appeared on the note as the holders and last indorsers, and therefore the parties who had the right to transfer title to him.

In this respect the case differs from the cases of Sherman v. Corn Exchange Bank, 91 App. Div. 84, 86 N. Y. Supp. 341, and First National Bank v. American Exchange Bank, 170 N. Y. 88, 62 N. E. 1089. In both of these cases the drawer of the check was actually dealing with the payee named in the check and described as payee, though as a matter of fact the drawer had been deceived into believing that it was dealing with another person. The courts there held that the bank, having paid the money to the person actually designated as payee, has carried out the drawer's directions. In this case, however, the plaintiff not only thought that he was dealing with Miller & Bonime, but he directed payment to the parties with whom he thought that he was dealing, and the bank has failed to obey these directions. Bonomowitz could not indorse the name of Miller & Bonime, unless he was the owner of the check. Seaboard National Bank v. Bank of America, 193 N. Y. 26, 85 N. E. 829, 22 L. R. A. (N. S.) 499. Certainly the indorsement made by himself could pass no title to himself, and his title must therefore be derived, if at all, directly from the plaintiff.

The plaintiff, however, had no dealings with any person except Vladower. Vladower appeared clothed with apparent authority from the firm of Miller & Bonime to discount a note. Plaintiff discounts the note, and gives in payment a check made payable to the apparent owners. The payee was an existent firm, and there is not a scintilla of evidence that the plaintiff ever intended to deal with any other person except that firm, or ever delivered the check with intent to pass title except to the persons named. The fact that Vladower or Bonomowitz obtained possession of the check from plaintiff with intent to retain it is immaterial, as is also the fact that Miller & Bonime were never actually entitled to the proceeds of the discounted note.

The governing fact in this case is that plaintiff delivered to Vladower a check which only Miller & Bonime were intended to use, and which only Miller & Bonime could use, and no title to the check passed either to Vladower or Bonomowitz. In the case of Seaboard National Bank

v. Bank of America, 193 N. Y. 26, 85 N. E. 829, 22 L. R. A. (N. S.) 499, an employé of a depositor known to the bank presented to the bank in Pittsburgh a forged check, purporting to be drawn by the depositor, and requested the bank to give him a New York draft payable to the order of Carroll Bros. Carroll Bros. were an actual firm, with whom the depositor was doing business, but to whom the depositor was not indebted. The bank gave the employé the draft as requested, and the employé negotiated the draft, forging Carroll Bros.' signature. It was held that the bank making the check to Carroll Bros. could not be charged with the payment. The court there said:

"The secret intention of a criminal, contrary to his express intention and the avowed purpose for which he obtains possession of a draft, does not give the criminal ownership of the draft, or a legal right to change a draft payable to a real payee to one payable to bearer. There is no presumption arising from the facts proven that the name Carroll Bros. was intended as a fictitious or nonexisting payee. Such intention, to be effective, must necessarily arise from knowledge and exist as an affirmative fact in the mind of the drawer of a draft at the time of its delivery. There is nothing in this case to estop the plaintiff from controverting the genuineness of the indorsement of the draft in controversy as in Coggill v. American Exchange Bank, 1 N. Y. 113, 49 Am. Dec. 310, where one of the members of a partnership, the makers of a draft, put into circulation with the forged indorsement of the payee upon it, or as in Phillips v. Mercantile National Bank, 140 N. Y. 556, 35 N. E. 982, 23 L. R. A. 584, 37 Am. St. Rep. 596, where the person who forged the name of the payee was the cashier of the defendant, empowered to bind the bank by his checks."

So in this case the secret intention of Bonomowitz by fraud to obtain possession of a check for his own benefit, contrary to his apparent intention and avowed purpose that the check should belong to Miller & Bonime, does not give him any ownership inconsistent with the form and tenor of the check, and there is no presumption that the name Miller & Bonime was intended as a fictitious or nonexisting payee. On the contrary, it affirmatively appears that the name Miller & Bonime was intended to describe an actual payee, and there is nothing in the case that estops the plaintiff from controverting the genuineness of the indorsement.

The defendant claims that it was negligence on the part of the plaintiff to put in the hands of Vladower a check drawn to Miller & Bonime without investigating whether the indorsement of Miller & Bonime on the note which the plaintiff was discounting was genuine. Obviously, of course, this argument must be based upon the premise that the plaintiff actually intended that the check should be payable to Miller & Bonime, and not to any owner of the note or to bearer, and that only Miller & Bonime could legally transfer title to the check. This alleged negligence, however, is immaterial, because no act of the defendant was induced by the acts, representations, or admissions of the plaintiff. See Seaboard National Bank v. Bank of America, supra. Even if the plaintiff had been actually suspicious of Vladower's right to receive a check payable to Miller & Bonime, he could have given Vladower a check payable to Miller & Bonime's order, confident in the knowledge that the diversion of the check could entail no loss upon him, for only Miller & Bonime

could transfer title to it, unless, of course, the check was delivered under circumstances clearly charging the plaintiff with knowledge that Vladower was an impostor.

In the case of Gallo v. Brooklyn Savings Bank, supra, a man representing himself as a depositor of a savings bank presented a bank book and demanded payment of the deposit. The appearance of the alleged depositor was totally different from the description contained in the bank book, and the bank was not satisfied with his explanation of this fact. It therefore paid him by check drawn to the order of the depositor, instead of in money. The check was thereafter paid and charged to the Savings Bank. The court there said, per Cullen, C. J.:

"I am not prepared to admit the proposition that when a bank or individual, not being satisfied of the rights or identity of the party claiming payment from it or him, declines to pay the party in money, but gives a check to the order of the known creditor, it or he is thereby necessarily guilty of negligence or fraud. It is the general rule of law in this country, and such is the common law, that the drawee of a bill or check or persons purchasing it 'take the paper relying solely on the reputed responsibility of their transferrors, and the other parties to it, and its apparent genuineness, and they, therefore, deal in it at their peril.' Crawford v. West Side Bank, 100 N. Y. 50 [2 N. E. 881, 53 Am. Rep. 152]."

It follows that the verdict directed for the plaintiff was correct, and should be reinstated.

Order reversed, with costs, and verdict reinstated, with costs. All concur.