The First National Bank of Kansas City, Appellant, v. Produce Exchange Bank of Kansas City.—89 S. W. (2d) 33.

Division One, December 18, 1935.

*Scarritt, Jones & North* for appellant.

*John B. Gage, Dean Lesher* and *Carson E. Cowherd* for respondent.

BRADLEY, C.—Plaintiff filed petition in three counts to recover a $1000 with interest on each count. The cause had its origin in the issue of three cashier's checks issued by plaintiff and paid by it to defendant. At the close of plaintiff's case the court gave a peremptory instruction, directing the jury to find for the defendant. Thereupon, plaintiff took an involuntary nonsuit with leave to move to set aside. Motion to set aside was timely filed, but overruled and plaintiff appealed. The appeal was granted to the Kansas City Court of Appeals. The Court of Appeals affirmed the holding of the trial court, holding that plaintiff, under the facts, could not recover. [First National Bank v. Produce Exchange Bank, 59 S. W. (2d) 81.] The deciding opinion of the Court of Appeals was written by Judge SHAIN. Judge BLAND concurred in a separate opinion. Judge TRIMBLE filed a dissenting opinion. The opinions in the Court of Appeals were filed February 6, 1933, and motion for rehearing was denied April 3, 1933. April 6, 1933, the Court of Appeals certified the cause to this court at the request of Judge TRIMBLE, who deemed the principal and concurring opinion to be in conflict with the holding in American Sash & Door Company v. Commerce Trust Company, 332 Mo. 98, 56 S. W. (2d) 1034; State v. Andrews (Mo.), 273 S. W. 726; and City of St. Louis v. St. Louis-S. F. Ry. Co., 228 Mo. 712, 129 S. W. 691. The request of Judge TRIMBLE does not appear in the published opinion, but in the order certifying. This court, Division One, on November 16, 1934, in an opinion by STURGIS, C., adopted by the court, affirmed the judgment of the trial court. Motion for rehearing was sustained and both sides filed briefs on rehearing and the cause was submitted on briefs, without oral argument, at our May Term, 1935.

It is alleged in the first count of the petition that both plaintiff and defendant were members of the Kansas City Clearing House Association and that as a member of said association, defendant agreed to be bound by the constitution, rules and regulations of the association; that September 25, 1929, plaintiff issued its cashier's check for $1000, payable to the order of James Edgar; that on or about September 26th, defendant delivered said check to the clearing house association for clearance in the usual course; that when so delivered the check purported to have been endorsed by the payee, Edgar, to the order of Ben Wilson and by Wilson and defendant; that on or about September 26th the check was presented to plaintiff by the clearing house association and that relying upon the endorsement by defendant and

its guaranty of the validity and genuineness of prior endorsements, plaintiff paid said check; and it is alleged that the endorsement of the payee, Edgar, was a forgery. It is further alleged that plaintiff on December 30, 1930, tendered the check to defendant with an affidavit of an officer of plaintiff that the endorsement of Edgar was a forgery, and demanded that defendant pay plaintiff $1000, and that defendant refused. It is further alleged that Article 18 of the constitution of the clearing house association contained a provision that "when any item; cleared through the association, should bear a forged endorsement or unauthorized endorsement, or endorsement alleged by the payee, or endorsee, to have been forged or unauthorized, the member clearing same should take it up on demand, when said item was accompanied by an affidavit of the complaining payee or endorsee." It was alleged that Article 19 of the clearing house association provided that "in place of written endorsements on all checks sent to the clearing house, they should be stamped by a stamp bearing the words 'Kansas City Clearing House,' the name of the bank presenting" and the date, "and that the member using said stamp made itself responsible for the genuineness of all previous endorsements." The second and third counts are the same in effect as the first count, except dates. The cashier's check in the second count was issued by plaintiff October 26, 1929, and in the third count the cashier's check was issued by plaintiff November 13, 1929.

Defendant answered by a general denial and then answered each count separately, setting out alleged facts which defendant contended made it not liable. Answering the first count, defendant alleged that plaintiff was not the real party in interest; that Lloyd's of London was the real party in interest; that Lloyd's issued to plaintiff a policy of insurance, insuring plaintiff against loss on account of forgery of names of endorsers and drawers upon any instruments drawn upon or paid through plaintiff; that Lloyd's had reimbursed plaintiff in full for any loss which it may have incurred. Defendant denies that the endorsement of Edgar was a forgery, and alleges that Wilson caused the cashier's check to be made payable to Edgar, knowing that Edgar was "a fictitious payee," and that no person by the name of Edgar had any interest in or knowledge of the check, and that Wilson intended, at the time the check was issued, to endorse the name of Edgar; that the check was written, payable to a fictitious person, at the request of Wilson, and was delivered to Wilson by plaintiff, and, it is alleged, that under the facts and the law the check was "payable to bearer," and that, the check being payable to bearer, the endorsement of Edgar was "unnecessary to the passing of the title thereto." Defendant further alleged that the loss, if any, sustained by plaintiff "was not sustained by reason of the issuance" of the cashier's check, but "by reason of and on account of

a prior closed transaction distinct from the issuance and delivery to the said Ben Wilson'' of the cashier's check. There are other allegations in the answer to the first count, but it is not necessary to refer to them. The answer to the second and third counts is the same as the answer to the first count. The reply denied new. matter generally.

The facts developed by plaintiff's evidence are as follows: September 25, 1929, Ben T. Wilson was office manager and bookkeeper in Kansas City, Missouri, of certain construction companies, viz.: List Construction Company, List & Clark Construction Company and List & Bagwell Construction Company. These were railroad construction companies and were interrelated and under one management. Wilson had ''the handling of the banking transactions'' of these companies. C. J. Brown was secretary and treasurer and signed checks for the construction companies. There was a James Edgar who was or had been at some time, ''superintendent of one of the outfits'' of these companies, but he knew nothing about the transactions giving rise to this cause, was not concerned, and so far as shown, Edgar never heard of the matter. List & Bagwell Construction Company and List & Clark Construction Company had an account in plaintiff bank. September 25th, Wilson filled out a check of the List & Bagwell Construction Company for $1000, payable to plaintiff bank. This check was signed for the company by C. J. Brown, its secretary and treasurer. Wilson took this check to plaintiff bank and by direction of Wilson, plaintiff's exchange teller, F. A. Berg, prepared a cashier's check for $1000 payable to James Edgar and delivered same to Wilson. Wilson then had the cashier's name placed thereon. After the cashier's check was completed and delivered to Wilson, he endorsed it as follows: ''Pay to the order of Ben Wilson'' and signed ''James Edgar,'' and then Wilson deposited the cashier's check in defendant bank to his own credit. The defendant bank thereafter endorsed this cashier's check: ''Produce Exchange Bank, Sept. 26, 1929, Kansas City Clearing House.'' The cashier's check of October 26th was obtained in the same manner as was the first one, but the check presented to plaintiff bank for this second cashier's check was the check of the List & Clark Construction Company. Wilson took the List & Clark Construction Company check to plaintiff bank and obtained a cashier's check payable to Edgar, and endorsed this second cashier's check: ''Pay to the order of Benjamin T. Wilson, Kansas City, Missouri. James Edgar, for deposit to act. of Benjamin T. Wilson.'' The second cashier's check was deposited by Wilson in defendant bank to Wilson's credit. The check was then endorsed by defendant bank as follows: ''Produce Exchange Bank, Nov. 7, 1929, Kansas City Clearing House.'' The cashier's check of November 13th was obtained in the same way, and the initial

check, like the transaction of October 26th, was drawn on the List & Clark Construction Company. Wilson endorsed the third cashier's check: "James Edgar" and under Edgar's name, he, Wilson, wrote his own name, Ben Wilson. This cashier's check was deposited in defendant bank to Wilson's credit and was endorsed by defendant: "Produce Exchange Bank, Nov. 15, 1929, Kansas City Clearing House." Plaintiff bank charged the respective company checks against the account of the company upon which drawn and plaintiff paid each of the cashier's checks as presented through the clearing house. Wilson got two other cashier's checks for $1000 each from plaintiff, these being dated March 1 and April 30, 1930, and as we understand the record these were obtained in the same manner as were the first three. The cashier's checks of March 1st and April 30th were payable to James Edgar and were deposited in defendant bank to Wilson's credit and cleared in the usual way. The checks of March 1st and April 30th are not involved in the present cause, and we mention them to explain the settlement made with Lloyd's. Lloyd's paid plaintiff bank in a compromise settlement $5000. It appears from the evidence of Wilson whose deposition was taken and offered by plaintiff that he "was convicted on five different charges of forgery and sentenced to four years in this institution. Q. Did that have anything to do with these three items you have identified, that is, were specific charges made against you on these items? A. That was to cover all charges."

It was admitted that both plaintiff and defendant were members of the clearing house association. So far as pertinent Articles 18 and 19 of the constitution of the clearing house association are as follows: (18) "When any item bears a forged endorsement, or endorsement alleged by the payee or endorsee to have been forged or unauthorized, the member clearing same shall take it up on demand when said item is accompanied by an affidavit of the complaining payee or endorsee that said endorsement was forged or unauthorized." (19) "In place of written endorsements on all checks sent to the clearing house, they shall be stamped by a stamp bearing the words 'Kansas City Clearing House,' the name of the bank presenting them, and the date of the month and year on which they are cleared. The member using said stamp thereby makes itself responsible for the genuineness of all previous endorsements, and for all informalities in such endorsements, without any special endorsement for guarantee; provided, that such endorsement by stamp as aforesaid, shall not be construed to supply, or as a guarantee for, missing endorsements."

If the cashier's checks were payable to bearer then plaintiff cannot recover, because, if so payable, no endorsement was required. [Sec. 2659, R. S. 1929.] Both the principal and concurring opinion by the Kansas City Court of Appeals held that under the facts the

cashier's checks were payable to bearer. In the principal opinion it is stated that "the checks to all intents and purposes were issued to a straw man, who neither had or claimed any interest and therefore, for the purpose of this case, should be treated as checks issued to bearer." In the concurring opinion it is stated that "the drafts (cashier's checks) in question were made payable to bearer under the provisions of Section 2638, Revised Statutes 1929, providing that an instrument is payable to bearer '. . . .(3) when it is payable to the order of a fictitious or nonexisting person and such fact was known to the person making it so payable.' " This court in the opinion by STURGIS, C., held that the cashier's checks were payable to bearer on the theory that Wilson was "the person making it so payable" as provided in division 3 of Section 2638, Revised Statutes 1929. Section 2638, Revised Statutes 1929, provides: "The instrument is payable to bearer: (1) When it is expressed to be so payable; or (2) when it is payable to a person named therein or bearer; or (3) when it is payable to the order of a fictitious or nonexisting person and such fact was known to the person making it so payable; or (4) when the name of the payee does not purport to be the name of any person; or (5) when the only or last endorsement is an endorsement in blank."

The law is well established that "the payee in an instrument will be deemed fictitious, though designating an existing person, if there was no intent he should have a beneficial interest in the paper." [American Sash & Door Co. v. Commerce Trust Co., 332 Mo. 98, 56 S. W. (2d) 1034, l. c. 1040; 8 C. J., sec. 305, p. 180.] James Edgar was a *real person*, but it was not intended that he should have any beneficial interest in the cashier's checks. Wilson testified that he used "the name of James Edgar as a fictitious name," intending to endorse the checks himself and deposit to his own account. That the payee named in the checks was a fictitious person within the meaning of the statute is conceded. Therefore, if Wilson was the *person*, within the meaning of the statute, Section 2638, making the cashier's checks payable to James Edgar, then, under the statute, the checks were payable to bearer, because Wilson knew that the payee was a fictitious person, and plaintiff's officers did not so know. The question, therefore, is: Was Wilson "the person making it (the checks) so payable," or was plaintiff bank such person? In American Sash & Door Co. v. Commerce Trust Co., supra, it appears that a payroll clerk of the plaintiff in that case made up the payroll and turned it over to the bookkeeper, who made out the checks and delivered them to the secretary and treasurer who signed them for the company, relying on the information presented to him. It turned out that the payroll clerk had padded the payroll with fictitious names and when the checks were signed he managed to extract those so

made to fictitious persons and forged the name of the payee and cashed them. The plaintiff sued its bank to recover its loss on these checks and one of the defenses was that the checks were, under the facts, payable to bearer and that the defendant had the right to cash the checks regardless of the endorsements. The Sash & Door Co. case was first before the Kansas City Court of Appeals, 25 S. W. (2d) 545, and it was by that court held, following Mueller & Martin v. Liberty Ins. Bank (Ky.), 218 S. W. 465, that the *person* meant by the statute, Section 2638, was not the *maker*, the Sash & Door Co., but the *individual* "who actually drew it," who in that case was the secretary and treasurer. This court held (56 S. W. (2d) 1034, l. c. 1041) that the word *person* used in the statute "means the maker of the paper," which in that case was the Sash & Door Company, and that the maker, under the facts there, did not *know* that the checks in question were payable to fictitious payees. [See, also, Seaboard National Bank v. Bank of America, 193 N. Y. 26, l. c. 33, 85 N. E. 829, 22 L. R. A. (N. S.) 499; Paine v. Continental & Commercial Nat. Bank, 259 Ill. App. 527; American Express Co. v. People's Sav. Bank (Iowa), 181 N. W. 701.] In the case at bar there is no claim that plaintiff bank knew that Edgar was a fictitious payee. But defendant urges that Wilson was the *person* "making it so payable," and in our former opinion by Sturgis, C., such conclusion was reached, distinguishing the Sash & Door Company case, supra, on the theory that there was such distinction between a depositor's check and a cashier's check as to make the ruling in the Sash & Door Company case inapplicable to the present facts. On a reconsideration we rule that plaintiff bank was the *person* within the meaning of division 3 of Section 2638, making the cashier's checks payable to James Edgar, a fictitious payee, and that since said person, plaintiff bank, did not know that the payee was fictitious, the checks were not payable to bearer.

The clearing house rules pleaded and in evidence are merely the expression of the general law. Both the law and Article 19 of the clearing house rules make defendant "responsible for the genuineness of all previous endorsements." The cashier's checks not being payable to bearer the endorsements by Wilson were forgeries, Am. Express Co. v. People's Savings Bank (Iowa), 181 N. W. 701, l. c. 703, and no title to the checks passed to defendant bank under these forged endorsements. Not having any title to the checks, defendant was not entitled to collect on them from plaintiff, and plaintiff, if not precluded on the defense that it has neither pleaded nor shown any loss, can recover back from defendant the amount with interest, from demand, that it paid to defendant on these checks. [Real Estate, etc., Trust Co. v. United Security Trust Co., 303 Pa. 273, 154 Atl. 593; First National Bank v. Federal Reserve Bank, 88

Mont. 589, 294 Pac. 1105; Leather Manufacturers' National Bank v. Merchants' National Bank, 128 U. S. 26, 9 Sup. Ct. 3, 32 L. Ed. 342; United States v. National Exchange Bank, 214 U. S. 302, 29 Sup. Ct. 665, 53 L. Ed. 1006, 16 Ann. Cas. 1184; First National Bank v. United States National Bank, 100 Ore. 264, 197 Pac. 547, 14 A. L. R. 479; American Exchange National Bank v. Yorkville Bank, 122 Misc. 616, 204 N. Y. Supp. 621; Id., 210 App. Div. 885, 206 N. Y. Supp. 879; Seaboard National Bank v. Bank of America, 193 N. Y. 26, 85 N. E. 829, 22 L. R. A. (N. S.) 499; 3 R. C. L., sec. 244, p. 616.]

■ Can plaintiff recover, not having pleaded nor shown any loss? This question, as were all others involved, was ruled by Judge Trimble in his dissenting opinion, First National Bank v. Produce Exchange Bank, 59 S. W. (2d) l. c. 87, and we adopt what is there said: "Nor is it a defense to say that plaintiff has been reimbursed for its loss by an insurance company insuring it in the course of its business, and that the plaintiff is no longer the real party in interest, having no pecuniary right in the matter. Plaintiff has in no way or manner assigned its cause of action, and whether its insurance company has reimbursed it or not, it still remains the real party in interest under our laws. [Foster v. Mo. Pac. Railroad Co., 143 Mo. App. 547, 128 S. W. 36; Sexton v. Anderson Elec. Car Co. (Mo. App.), 234 S. W. 358; Keeley v. Indemnity Co. of America, 222 Mo. App. 439, 7 S. W. (2d) 434.]"

It is our conclusion that the trial court erred in overruling plaintiff's motion to set aside the involuntary nonsuit. The judgment or order overruling said motion to set aside should be reversed and the cause remanded with direction to sustain said motion to set aside and to set aside said involuntary nonsuit and reinstate said cause, and it is so ordered. *Ferguson* and *Hyde, CC.,* concur.

PER CURIAM:—The foregoing opinion by Bradley, C., is adopted as the opinion of the Court. All the judges concur.

On Motion for Rehearing.

BRADLEY, C.—In next to the last paragraph of the opinion filed we intended to answer the question: ■ Can plaintiff recover, not having pleaded nor shown any loss? by adopting what Judge Trimble said on this question in his dissenting opinion, but, perhaps, we did not make ourselves clear. In addition to what we quoted, which we think is pertinent, Judge Trimble, in his dissenting opinion (59 S. W. (2d) page 87) said: "It is urged that plaintiff cannot recover because it has 'suffered no loss.' . . . The suit is not one for damages, but to recover money the defendant bank had and received, but to which it never had title and for which it gave plaintiff

no consideration. The plaintiff, the moment it paid out the money on the forged indorsements had a cause of action against defendant, which arose immediately. The suit is to recover the money, and is not dependent upon whether a loss will eventually accrue to plaintiff, nor is the suit based upon the checks. [Clearfield Bank v. Madera National Bank, 87 Pa. Super. Ct. 564. See, also, Leather Manufacturers' National Bank v. Merchants' National Bank, 128 U. S. 26, 9 Sup. Ct. 3, 32 L. Ed. 342.]''

It is contended in the motion for rehearing that the result of our opinion runs counter to Section 2652, Revised Statutes 1929 (Mo. Stat. Ann., sec. 2652, p. 655.), a part of our negotiable statute. This section provides that ''where a signature is forged or made without the authority of the person whose signature it purports to be, it is wholly inoperative, and no right to retain the instrument, or to give a discharge therefor, or to enforce payment thereof against any party thereto, can be acquired through or under such signature, unless the party against whom it is sought to enforce such right is precluded from setting up the forgery or want of authority.'' There is nothing in the opinion that runs counter to this statute. Edgar is in no way involved. His name was used, but forged, and it was not intended that he would have anything to do with the cashier's checks, and there is no question here on Edgar ''being precluded from setting up the forgery.'' And it is argued that we are in conflict with Clifford Banking Co. v. Donovan Commission Co., 195 Mo. 262, l. c. 289, 94 S. W. 527; Foege v. Merchants'-Laclede National Bank (Mo. App.), 208 S. W. 854; Stout v. Caruthersville Hdw. Co., 131 Mo. App. 520, 110 S. W. 619, l. c. 621; Wilson v. Torchon Lace & Mercantile Co., 167 Mo. App. 305, 149 S. W. 1156. We do not agree that we are in conflict with the cases cited.

It is argued that our ruling that the cashier's checks were not payable to bearer renders ''nonnegotiable and nontransferable for want of a person having authority to endorse as payee all *such* cashier's checks;'' and that such holding makes ''the issuing bank unable to comply with the provisions'' of Sections 2688 and 2689, Revised Statutes 1929 (Mo. Stat. Ann., secs. 2688, 2689, p. 684). So far as here pertinent, Sections 2688 and 2689 provide that the maker of a negotiable instrument ''admits the existence of the payee and his then capacity to indorse.'' These sections have reference to *negotiable* instruments. Among the requirements of a negotiable instrument is that it ''must be payable to order or to bearer.'' [Sec. 2630, R. S. 1929, Mo. Stat. Ann., sec. 2630, p. 644.] The cashier's checks were not, as we have ruled, under the facts, payable to order, legally speaking, or to bearer, therefore, they were *not* negotiable, and our holding in no way conflicts with Section 2630. It is contended vigorously in the motion for rehearing that we are wrong in holding that the

cashier's checks were not payable to bearer, and it is again argued, as in the original briefs, that there is such distinction between the ordinary depositor's check and a cashier's check that the ruling in American Sash & Door Co. v. Commerce Trust Co., 332 Mo. 98, 56 S. W. (2d) 1304, on the question as to "the person making it so payable" is not applicable. And we are asked to retract. That case, as appears in our opinion, concerned the ordinary depositor's check. We followed that case and applied the reasoning therein to the facts in the present case and have no doubt as to the correctness of our ruling. It is true that there is a difference in the application of some of the rules of law affecting ordinary checks and a cashier's check. Example, "a cashier's check, being merely a bill of exchange drawn by a bank on itself, and accepted in advance by the act of its issuance, is not subject to countermand by the payee after endorsement, as is an ordinary check by the drawer." [5 Michie, Banks and Banking, sec. 251, p. 454.] Our statute defines a bill of exchange as "an unconditional order in writing addressed by one person to another, signed by the person giving it, requiring the person to whom it is addressed to pay on demand or at a fixed or determinable future time a sum certain in money to order or to bearer." [Sec. 2754, R. S. 1929, Mo. Stat. Ann., sec. 2754, p. 708.] And the statute defines a check as "a bill of exchange drawn on a bank payable on demand." [Sec. 2813, R. S. 1929, Mo. Stat. Ann., sec. 2813, p. 721.] The only apparent difference, except the application of some rules of law, between the ordinary check and a cashier's check, is that the ordinary check is drawn on one, other than the drawer, while in a cashier's check, both the drawer and the drawee are the same. We are unable to appreciate how this difference could work a different construction and application of division 3 of Section 2638, Revised Statutes 1929, than was given in the American Sash & Door Co. case, supra.

American Express Co. v. People's Savings Bank (Iowa), 181 N. W. 701, cited in our opinion, was an action to recover the proceeds of four drafts in which the plaintiff was both drawer and drawee, as in the present case. The payees were fictitious. One Crozer purchased the drafts and gave therefor his personal checks drawn on the defendant bank. After receiving the drafts Crozer endorsed them by writing thereon respectively the names of the payees and cashed them at the defendant bank. The drafts were then endorsed by the cashier of the defendant bank "to the order of the Continental & Commercial National Bank of Chicago," and further, "prior endorsements guaranteed." The drafts were presented by the Chicago bank to the plaintiff express company, and were paid. The plaintiff express company, "not having realized" on Crozer's checks, brought suit against defendant bank. At the close of plaintiff's case, the trial court, on

motion, directed a verdict for the defendant. The Supreme Court of Iowa reversed the judgment on such direction, saying that "if plaintiff's petition stated a cause of action, and its averments were sustained by plaintiff's evidence, then the court was in error in directing a verdict, regardless of the defense tendered by the answer, and regardless of the failure of plaintiff to allege and prove special damage." In ruling the question presented, the Iowa Supreme Court said: "Were the instruments in suit payable to bearer? The drafts in question are negotiable in form, and payable to fictitious or nonexisting persons. When a draft is payable to the order of a fictitious or nonexisting person, and such fact is known to the drawer, it is payable to bearer. [Section 3060a9.] When the name of the payee does not purport to be the name of any person, it is also payable to bearer. Id. 'Person' includes a body of persons whether incorporated or not. [Section 3060a191.] The plaintiff company as drawer intended that these drafts should be paid to the named payees, and not to the purchaser, Crozer, and it was not known by the drawer that these drafts were payable to the order of fictitious or nonexisting payees. This being true, the drafts were not payable to bearer." Such is sound reason and we adopt it.

It is stated in the motion for rehearing that in the opinion filed we overlooked "the fact that this case (the Iowa case) was retried after remand and a decision rendered with the opposite result." The Iowa case was retried, American Express Co. v. People's Savings Bank (Iowa), 205 N. W. 1, but when the evidence of both sides was in, an entirely different picture was presented than appeared at the first trial. Of the evidence at the second trial the court said: "Although the clerk or cashier of the express company at Cedar Rapids testified that the drafts in question were intended to be paid to the named payees, and that he did not know that they were payable to the order of fictitious or nonexisting payees, it is shown that Mr. Moyer, the general agent of the company, had knowledge that Crozer was adopting a trade name or names in securing the drafts which were subsequently paid by the defendant bank through the Chicago office of the plaintiff. The trial court was clearly correct in its finding that the plaintiff company knew the method and manner of Crozer in handling these transactions and that the company as a matter of law had knowledge that when these numerous drafts were issued the payees thereof were names used by Crozer for the purpose of conducting the business, and for no other." In other words, under the facts of that case it was found that the express company, the drawer and drawee, of the drafts *knew* that the payees were fictitious. While a "different result" was reached in the second trial and in the second opinion, it was on entirely different state of facts as found, and in no manner affected the holding in the first opinion.

Complaint is made in the motion for rehearing that we did not mention the issue of delay in giving notice on the part of plaintiff "amounting to approximately two months," as defendant says in the motion, after discovery of the alleged forgeries before notifying defendant. This case is here on appeal by plaintiff from an order of the trial court refusing to set aside, on motion, an involuntary nonsuit. The defense of the alleged delay is an affirmative defense, the burden of which was on defendant. We did not, in the opinion filed, discuss that question, because we did not consider and do not now consider that, under the facts disclosed by plaintiff's case, there was reason to say that plaintiff could not recover because of the delay. Plaintiff's evidence tended to show that as soon as the facts relative to the situation were definitely discovered or ascertained, notice was given. Plaintiff's auditor testified that in June or July, 1930, plaintiff learned that the construction companies "suspected some irregularities, but what they were, they didn't know; they were having an audit made . . . to determine what the irregularities were." Plaintiff's auditor testified further: "Q. Well, did they (the construction companies) at least notify or did there come to your notice certain alleged forgeries in connection with some cashier's checks which you had issued? A. Yes. Q. I will ask you whether alleged forgery in connection with some checks which had cleared through the Produce Exchange Bank came to your notice? A. Yes, sir. Q. As soon as that definite notice came to you so that the checks could be identified what did you do? A. We made a demand upon the Produce Exchange Bank for the amount. Q. Was that in writing? A. Yes." Notice and demand were made by registered mail August 14, 1930. This notice or demand was not verified as contemplated by Article 18 of the clearing house association, and on December 16, 1930, verified notice or demand was made on defendant. Manifestly, so far as disclosed, there is no merit in defendant's contention on the question of delay.

The motion for rehearing should be overruled, and it is so ordered. *Ferguson* and *Hyde*, *CC.*, concur.

PER CURIAM:—The foregoing opinion by BRADLEY, C., is adopted as the opinion of the court. All the judges concur.