## UNITED STATES v. COMMERCE TRUST CO.

### No. 166.

District Court, W. D. Missouri, W. D.

Nov. 21, 1939.

Maurice M. Milligan, U. S. Atty., and Charles L. King, Sp. Asst. U. S. Atty., both of Kansas City, Mo., for plaintiff.

Barnett, Seddon & James, of Kansas City, Mo., for defendant.

OTIS, District Judge.

Shorn of incidentals the case presented by Count 1 of the petition, the answer and the evidence is that now to be stated. An unidentified individual whom we shall designate as Mr. X signed the name "Robert Irwin" to a promissory note payable to the City National Bank and Trust Company. Without exercising due diligence to ascertain whether a certain Robert Irwin, who lived at 2307 Independence Avenue, Kansas City, Missouri, and whom the bank's officer supposed had signed the note, was the signer of the note presented, the City National accepted it as an obligation and issued its cashier's check, payable to Irwin, for the amount of the loan. Mr. X then signed the name "Robert Irwin" on the back of the cashier's check. Thereafter one Littick endorsed his, Littick's name, below that of Irwin and presented the cashier's check to defendant, Commerce Trust Company. The Commerce cashed the check, stamping on the back the following design and words:

In due course the Commerce was paid by the City National. The City National's cause of action has been assigned to plaintiff. The underlying question is whether the City National could have recovered (and whether plaintiff can recover) from the Commerce by reason of the stamped design and words.

1. The sole theory presented by the petition upon which it is contended that defendant would have been liable to the City Bank is that the defendant by its stamp "guaranteed all prior endorsements on said check, including the pretended endorsement of the payee, Robert Irwin, which was a forgery." Another theory is hinted at in the petition, to-wit, that both the City Bank and the Commerce were members of the Kansas City Clearing House Association, that, as such, they had "agreed to be bound by the constitution, rules and regulations of the association." But no rule or regulation was pleaded. No contract based on any rule or regulation was pleaded. When, at the trial, it was sought to introduce the constitution, rules and regulations of the Clearing House Association, it was sharply called to the attention of the plaintiff by objection that they were not pertinent to the issues pleaded. Counsel for plaintiff then announced, and again stated in the oral argument, that he did not rely on the constitution, rules and regulations, but on the obligation of the defendant under the law.

The endorsement of the Commerce was stamped on the back of the check. It was not signed. It cannot be denied, however, under the admissions in the answer (and it has not been denied) that the stamped words and symbols constituted a general endorsement. As such it was a guaranty (although perhaps not to all) of the genuineness of prior endorsements. R.S. Mo.1929, Sec. 2690, Mo.St.Ann. § 2690, p. 685; First National Bank v. Produce Exchange Bank, 338 Mo.Sup. 91, 89 S.W.2d 33, 37.

But what is meant when it is said that it was a guaranty of the genuineness of prior endorsements, including that of Robert Irwin? Did the Commerce guarantee that some particular Robert Irwin endorsed the check? Yes. But what particular Robert Irwin? That particular Robert Irwin, we should say, to whom, in this instance, the check was payable.

There was a Robert Irwin who resided at 2307 Independence Avenue in Kansas City. Certainly, however, when the Commerce guaranteed that Robert Irwin had endorsed the check it did not guarantee that the Robert Irwin who resided at 2307 Independence Avenue had endorsed the check. It guaranteed only that the very man to whom the check was issued under the name of Robert Irwin had endorsed the check.

Suppose the true name of Mr. X was Robert Irwin (conceivably, it was, the contrary has not been proved). That Robert Irwin signed an application to the City Bank for a loan and in the application gave as his address the address of another Robert Irwin, 2307 Independence Avenue. The Bank, mistakenly believing that the Robert Irwin who signed the application was the Robert Irwin who lived at 2307 Independence Avenue and whose credit was good, made out a note for the Robert Irwin who signed the application. The identical Robert Irwin who signed the application then signed the note and the Bank issued its check to the Robert Irwin who signed the application and the note. All of this the Bank intended (although, in the thought of the officer who acted for the Bank, Robert Irwin was that particular Robert Irwin who lived at 2307 Independence Avenue). The check was made payable to "Robert Irwin", not to "Robert Irwin of 2307 Independence Avenue." There was nothing whatever on the check to indicate to any to whom it might be presented that the drawer had in mind some other Robert Irwin than the Robert Irwin who signed the note to the Bank.

The Commerce guaranteed that the man who endorsed the name "Robert Irwin" on the back of the check was the same individual who signed the note and the application for a loan. He was that same individual. The Commerce did not guarantee that the individual using the name Robert Irwin, who signed the application and note and to whom the check was made payable, was a Robert Irwin who did not sign the application and the note, to whom an official of the City Bank thought the check was payable.

2. Even a general endorsement is not a guaranty to all, without exception or qualification, of the genuineness of prior endorsements. In certain situations comparative negligence is to be considered. It seems to us that this is one of these situations and that Stout v. Benoist et al., 39 Mo. 277, 278, 90 Am.Dec. 466 (a case which has never been overruled in Missouri and which still declares the law of the state) is in point. It was held there that a bank which had issued a certificate of deposit to its customer could not recover from another bank which had paid the certificate, and generally endorsed it after the forged endorsement of the first bank's customer. Citing the leading case of Price v. Neal,

3 Burr. 1355, and other cases the Missouri Supreme Court said: "Bankers have the means in their own hands, by acquiring an intimate knowledge of the signatures of their customers, of protecting and securing themselves against impositions and forgeries. They alone possess the means of knowing, when paper is presented to them, whether the signatures or endorsements are genuine. And if these means are not employed, it is evidence of a neglect of duty which the public have a right to require of them for its safety. In a case where persons are equally innocent, and one is bound to know and act upon his knowledge, and the other has no means of knowledge, it would be inequitable and unjust to burden the latter with a loss for the purpose of exonerating the former."

Certainly there is no essential distinction between a certificate of deposit and a cashier's check. Except for the nominal distinction Stout v. Benoist et al. is identical with the case before us. The City National issued its check to its customer, to whom it was loaning money on his application giving his purported address. It had the means of knowing and was duty bound to know the signature of its own customer and to know, when the check came back, whether the endorsement was a forgery. The Commerce had no such means of knowing and no duty corresponding to that of the City National. If both banks were innocent, certainly the negligence of the City National was the greater.

These are the reasons on account of which we think the City National could not have recovered from the Commerce. Plaintiff's counsel has conceded that if the City National could not have recovered, the plaintiff, its assignee, cannot recover. There is, we think, still another reason why plaintiff cannot recover.

3. We know of no department of the government and of no official authorized to take generally assignments of causes of action. We have no doubt, however, that an assignment to the government may be taken by any branch of the government to save the government from loss by reason of the exercise of any governmental function. If the Federal Housing Administration had power to insure the City National against loss resulting from a fraud perpetrated upon it no doubt it was impliedly authorized to take the assignment here.

But the Federal Housing Administration had no such power. Its only power was "to insure banks * * * qualified * * * as eligible for credit insurance, against losses which they may sustain as a result of loans and advances of credit * * * for the purpose of financing alterations, repairs, and additions upon improved real property * * *, by the owners thereof * * *." Title 12, Sec. 1703, U.S.C., 12 U.S.C.A., § 1703. The contract with the City National, introduced in evidence, insured the Bank "pursuant to such act and under such regulations as may be issued by him (i. e. by the Administrator) from time to time which are hereby made a part of this contract." The only pertinent regulation was Regulation No. 1, reading, "Promissory notes must be signed by an owner of the real property to be improved, * * *."

In the light of these provisions of the law, the contract and the regulations, how can it be said that the Federal Housing Administration or Administrator ever insured the City National that the note to which the name Robert Irwin was signed was in fact signed by the Robert Irwin who lived at 2307 Independence Avenue? That cannot be said, of course. If the Robert Irwin who lived at 2307 Independence Avenue (a) had applied for a loan and if (b) the loan was for the purpose of "financing alterations, repairs, and additions upon improved real property" and if (c) that particular Robert Irwin had himself signed a promissory note and if (d) the Robert Irwin who signed the note owned the property to be improved, then his credit (that he would pay the note when due) would have been insured. There was no other insurance. Nothing relating to the note here was insured. The government was under no obligation to reimburse the City National and it had no authority to take the assignment.

What we have said concerning Count 1 of the petition applies as well to other counts. As to each count defendant should have judgment. Counsel for defendant are directed within five days to submit proposed findings of fact and formal conclusions of law in line with this memorandum and a form of judgment.